## WILLIAMS *et al.* v. JOHNSON.

No. 1568.   Opinion Filed March 12, 1912.

(122 Pac. 485.)

1. **CONSTITUTIONAL LAW**—Treaties with Indians—Amendment—Repeal. When Congress determines that the best interests of the Indian will be subserved by the abrogation, annullment, amendment, or repeal of a treaty agreement made with a tribe of Indians, it may, by subsequent act, make the necessary modification or amendment, and of the advisability, or expediency, of such change or alteration, Congress is the sole and exclusive judge. The question, being political and not judicial, is therefore not a proper subject for consideration by the courts.

2. **SAME**—Alienation of Lands—Repeal of Statute. The repeal of a law by implication is not favored by the courts, and will not be held to exist if there is any other reasonable construction or interpretation by which the conflicting acts may be sustained; but, where there is a hopeless and irreconcilable conflict between two acts of Congress, the latter will prevail over the former. In this case the act of Congress of April 21, 1904 (chapter 1402, 33 St. at L. 204), repeals by implication, in so far as there is such conflict, the act of Congress of July 1, 1902 (chapter 1362, 32 St. at L. 641).

(Syllabus by Robertson, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Ben F. Johnson against Eli P. Williams and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Frank O. Johnson,* for plaintiffs in error.

*Bond & Melton,* for defendant in error.

Opinion by ROBERTSON, C. Ben F. Johnson, hereinafter designated as plaintiff, filed his petition in the district court of Grady county on July 27, 1909, against Eli P. Williams, Elmer Williams, and Charles H. Williams, hereinafter designated as defendants, and sought thereby to quiet the title to certain real estate in Grady county. Thereafter, by leave of court, plaintiff amended his petition, and alleged, in substance, that he was the legal owner in fee simple, and in the actual and peaceable possession of certain real estate in Grady county, describing it; that said land was allotted to Selin Taylor, a member of the Choctaw Tribe of Indians by blood; that on November 22, 1904, there was issued to said Taylor a patent for said land, signed by Green McCurtain, Principal Chief of the Choctaw Nation, and Douglass H. Johnston, Governor of the Chickasaw Nation, and Thomas Ryan, acting Secretary of the Interior, in behalf of the United States; that at the time of the allotment of said land the same was inalienable; that on February 9, 1906, the United States Indian Agent issued to Selin Taylor certificate No. 2458, removing the disabilities of said Selin Taylor on the alienation of said land; that after said certificate of removal, to wit, February 16, 1906, Selin Taylor, for a valuable consideration, made and delivered to C. B. Campbell his warranty deed, thereby conveying to said Campbell the land in question, which deed is of record in the office of the register of deeds of Grady county; that on the 13th day of March, 1906, said Campbell and his wife conveyed said land by warranty deed to the plaintiff, Ben F. Johnson; that thereby said plaintiff acquired the full and complete title to said land; that on November 15, 1906, Selin Taylor and his wife, Ellen Taylor, made and delivered to James E. Whiteheld their warranty deed to the land in question; that on Octo-

ber 22, 1909, Whiteheld conveyed to J. E. McNeill all his inter-
est in said land, and that thereafter, on October 25, 1909, Mc-
Neill conveyed all his right, title, and interest in and to said
land to the plaintiff, Ben F. Johnson; that by reason of the con-
veyances aforesaid the plaintiff now holds the legal and equit-
able title to said land. Plaintiff further charged that the de-
fendants, and each of them, claim some title to said land by vir-
tue of a certain power of attorney executed by Selin Taylor,
covering the lands in question, on March 11, 1907, said instru-
ment filed for record in the office of the United States court at
Chickasha, and duly recorded therein, and now a matter of
record in the office of the register of deeds of Grady county;
that said power of attorney is void and of no force and effect,
and that by virtue thereof defendants have acquired no right,
title, interest, or estate in and to said lands; that said power of
attorney is void, yet it clouds the title of plaintiff, and, unless
canceled and set aside by the court, will injure the title and inter-
ests of the plaintiff in and to said land.

The defendants filed their answer in due time, which, be-
sides being a general denial, admits that plaintiff is in posses-
sion of the land in controversy, but alleges that said possession
is unlawful, and that plaintiff has no title thereto. They admit
that the land was allotted to Selin Taylor, and that Taylor was
a member of the Choctaw Tribe of Indians; that the patent was
issued to him as alleged in the petition of the plaintiff, and that
at the time of the allotment the land was inalienable; that said
allotment was made on May 23, 1903, and that Taylor received
his allotment certificate and patent to the same under an act of
Congress approved July 1, 1902, known as, "An act to ratify and
confirm an agreement with the Choctaw and Chickasaw Tribes
of Indians, and for other purposes"; that said act was called an
"Agreement," and was ratified by Congress and by a majority
of the legal voters of the Choctaw and Chickasaw Tribes, in
the manner required in said agreement, and that said agreement
was for a valuable and sufficient consideration, and is a binding
contract upon the United States and the Choctaw and Chickasaw

Nations, and all Choctaws and Chickasaws, and particularly Selin Taylor; and that same is now in full force and effect. Defendants further allege that Selin Taylor is not a ward of the United States, and was not, at the time he was allotted said land; that by act of Congress approved March 3, 1901 (Act March 3, 1901, c. 868, 21 St. at L. 1447), Selin Taylor was made a citizen of the United States, and thereby entitled to all rights, privileges, and immunities of other citizens. Defendants further allege that the Choctaw and Chickasaw Nations, and not the United States, are the grantors in the patent to Selin Taylor for said land, and set up a copy of said patent as an exhibit to and make it a part of their answer; that said grantors, the Choctaw and Chickasaw Nations, imposed restrictions on said Selin Taylor in said patent against the alienation of said land, for the protection and benefit of Selin Taylor, and said grantors have not in any way consented to the removal of the restrictions against the alienation of said land; that said restrictions are in full force and effect, but that, wholly disregarding said restrictions so imposed in said patent, C. B. Campbell and James E. Whiteheld induced said Selin Taylor to execute to them, to his great property loss and damage, the deeds complained of herein, and that said deeds so executed by said Taylor to said parties are in violation of the restrictions upon alienation contained in his patent, and are therefore illegal and void. Defendants further allege that said patent was issued by authority of section 29 of an act of Congress approved June 28, 1898 (Act June 28, 1898, c. 517, 30 St. at L. 505), and attach a copy of said section to their answer as an exhibit. They further allege that said patent contained the following clause: "Subject, however, to the provisions of the act of Congress approved July 1st, 1902" (32 St. at L. 641), and on account of said clause in said patent the entire act of Congress became a part of said patent, and a copy of said act is also attached to the answer and made a part thereof. They further allege that Selin Taylor and the defendants claim title to said land under said agreement as aforesaid, and also under the patent to said land issued by the Choctaw and Chickasaw Nations to Selin Taylor;

that said agreement and said patent imposed restrictions upon the alienation of all lands allotted to members of the said tribes for the protection and benefit of said members, and that Selin Taylor, a full blood Choctaw Indian, and a member of the Choctaw Tribe of Indians, and who did not understand the English language, and was wholly ignorant of land values, and was in need of, and entitled to, the protection and benefit of said restrictions so imposed, and, conditioned as he was on the date of his deeds complained of to Campbell and Whiteheld, said protection and restrictions were of great value to him, and were to him property as much as the land itself.

Defendants admit that Taylor executed the deed to Campbell as charged in the petition, and also admit that Taylor and his wife executed the deed to Whiteheld, as alleged in the petition, and they allege also that plaintiff's title and right of possession to said land is based upon said deeds, and that said deeds were executed under an unconstitutional act of Congress approved April 21, 1904 (33 St. at L. 204), which attempted to remove the restrictions upon the alienation of said land, to the great property loss and damage to said Taylor and the defendants, contrary to and in open violation of the restrictions against alienation in the act of Congress approved July 1, 1902 (32 St. at L. 641), under which Selin Taylor allotted said land and acquired title thereto, and also contrary to, and in open violation of, the restrictions against alienation contained in the patent from the Choctaw and Chickasaw Nations to Selin Taylor for said land. They also charge that on account of said last-mentioned act of Congress, and on account of the restrictions contained in said patent, said land was not alienable when Taylor executed the deeds to Campbell and Whiteheld, and said deeds are therefore illegal and void, and conveyed no title to said land. Defendants further allege that the plaintiff, by virtue of the pretended title based upon said illegal deeds, and in open violation of and contrary to the restrictions contained in the patent, as well as of the restrictions contained in the act of Congress of July 1, 1902, has taken possession of said land and claims it as

his own, and refuses to surrender possession, or attorn for the rents, which conduct is an impeachment and impairment of the title to said land derived from the United States, and the Choctaw and Chickasaw Nations, as well as of the defendants' interests in said land by reason of the power of attorney as aforesaid, and is in violation of the Constitution and laws of the United States. Defendants admit that the restrictions were removed from Selin Taylor by certificate No. 2458 as alleged in plaintiff's petition, and admit that said certificate was issued under authority of the act of Congress approved April 21, 1904 (33 St. at L. 204), and that the object of said act of Congress and of said certificate is to remove the restrictions upon the alienation of the lands in question, but allege that both the act of Congress, as aforesaid, and said certificate No. 2458 impair the obligation of a contract, or a binding agreement, upon the United States, and upon the Choctaw and Chickasaw Nations, and upon all Choctaws and Chickasaws, and especially Selin Taylor, and that the same are an impeachment and impairment of the title to said lands, as well as an impeachment and impairment of the interests of the defendants in and to said lands, and the rents thereof, and that the same are repugnant to the act of Congress approved July 1, 1902 (32 St. at L. 641), under which Selin Taylor allotted the land, and that they are repugnant to the Constitution of the United States and the clause in the fifth amendment thereof which provides that no person shall be deprived of property without due process of law, and are therefore unconstitutional, illegal, and void. Defendants pray in their answer for a judgment canceling and annulling the deeds executed by Taylor to Campbell, and from Campbell to Johnson, and also the deed from Taylor and his wife to Whiteheld, and the deed from Whiteheld to McNeill, and the deed from McNeill to Johnson, and for a decree annulling and canceling all the interest of the plaintiff Johnson to the land described and the rents thereof, and the improvements thereon, and for a judgment for the possession of said land, and for rents and costs, and for general relief.

On December 7, 1909, plaintiff filed a demurrer to the answer of defendants, which, after argument of counsel and due consideration by the court, was sustained on December 16, 1909, and, defendants refusing to plead further, plaintiff thereupon took judgment according to the prayer of his petition, and a decree was entered canceling the power of attorney given by Taylor to the defendants, and quieting the title of said land in Ben F. Johnson and for his costs, from which judgment defendants appeal, and allege many errors in said ruling and judgment, but agree in their brief with counsel for plaintiff in error that the only question in this case is, "Was the land in controversy in this case alienable on the date of the deeds executed by Selin Taylor to the defendant in error Ben F. Johnson and his grantors, and on which the title of Johnson to said land is based?"

The act of Congress approved July 1, 1902 (32 St. at L. 641), under which the Selin Taylor allotment was made, and the patent issued, contained the following restrictive provisions, to wit:

"(15) Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may, be alienated under this act, nor shall said land be sold except as herein provided.

"(16) All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years, in each case from date of patent. Provided, that such lands shall not be alienated by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw Tribal Governments, for less than its appraised value."

"(68) No act of Congress or treaty provisions, nor any provision of the Atoka Agreement inconsistent with this agreement, shall be in force in said Choctaw and Chickasaw Nations."

"(73) This agreement shall be binding upon the United States and upon the Choctaw and Chickasaw Nations, and all Choctaws and Chickasaws when ratified by Congress, and by a

majority of the whole number of the votes cast by the legal voters of the Choctaw and Chickasaw Tribes in the manner following: The Principal Chief of the Choctaw and the Governor of the Chickasaw Nation, shall within one hundred and twenty days after the ratification of this agreement by Congress, make public proclamation that the same shall be voted upon at any special election to be held for that purpose within ninety days thereafter, on a certain day therein named; and all male citizens of each of said tribes qualified to vote under the tribal laws shall have a right to vote at the election precinct most convenient to his residence, whether the same be within the bounds of his tribe or not. And if this agreement be ratified by said tribes as aforesaid, the date upon which said election is held shall be deemed to be the date of final ratification."

The act of Congress approved April 21, 1904 (33 St. at L. 204), removing restrictions, and under which Taylor executed his deed to Campbell and Whiteheld, and which defendants allege to be unconstitutional, contains the following provision, to wit:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian Agent at Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied, upon a full investigation of each individual case, that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian Agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

It is apparent that there is a direct conflict between these two acts of Congress, and the question, therefore, necessarily arises, Which act shall control? Or, rather, Has Congress the power to alter, amend, or modify, by a subsequent act of Congress, the provisions of a treaty with the Five Civilized Tribes of Indians? In the case at bar, Congress, by virtue of the former act, which was in effect a treaty between the Choctaws and Chickasaws on the one side, and the United States on the other,

and which was ratified by both Congress and the Tribes, provided that the land allotted should be inalienable, except as provided in section 16 thereof. Two years later, by an independent act, without the assent of the Choctaw and Chickasaw Nations, Congress provided that the removal of restrictions from all lands except minors and except as to homesteads may, with the approval of the Secretary of the Interior, be effected under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian Agent at the Union Agency, etc. If Congress has such power to alter, amend, or modify the provisions of a treaty with the Five Civilized Tribes of Indians, then the judgment of the lower court in the case at bar is correct, but, if Congress has no such power, the judgment is wrong, and must be reversed. The parties to this action concede this to be the test, and agree that the answer to the question will be decisive of this case. Without doubt the Congress of the United States has full authority to treat with the subject-matter of these two acts, to wit, the alienation of Indian allotments, as its judgment may direct, and in that particular the will of Congress is supreme, and is not a subject for the consideration of the courts.

In *Godfrey v. Iowa Land & Trust Co.*, 21 Okla. 293, 95 Pac. 792, it is said:

"There can be no serious question of the authority of Congress to remove restrictions upon the alienation of the lands of allottees without the consent of the tribe."

In *Wadsworth v. Boysen*, 148 Fed. 771, 78 C. C. A. 437, in discussing the question as to whether or not a subsequent act of Congress can supersede a treaty with a tribe of Indians, it is said:

"In such cases, whenever a conflict is alleged to exist between a treaty and a legislative act of amendment, the courts, in construing them, while endeavoring to give force and effect to both, if they cannot be reconciled, will give effect rather to the legislative amendment. A treaty is of no greater force than an act of Congress, and, when it becomes the subject of judicial cognizance in the courts, it is held to be subject to such provisions as Congress may make by modification or amendment.

This rests upon the established rule that the provisions of an act of Congress passed in the exercise of its constitutional power, when clear and explicit, will be upheld by the courts, although in seeming conflict with an antecedent treaty stipulation."

In *Ward v. Race Horse,* 163 U. S. 504, 16 Sup. Ct. 1076, 41 L. Ed. 244, Mr. Justice White, now Chief Justice White, said in discussing this identical question: "That a treaty may supersede a prior act of Congress and an act of Congress supersede a prior treaty, is elementary"—citing *Fong Yue Ting v. U. S.,* 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905. In *The Cherokee Tobacco* case, 11 Wall. 621, 20 L. Ed. 227, the Supreme Court of the United States held that an act of Congress imposing a tax on tobacco, if in conflict with a prior treaty with the Cherokees, was paramount to the treaty. This is a very strong case in support of the doctrine that a subsequent act of Congress on the same subject takes precedence over a prior treaty agreement, and this doctrine obtains not alone to the so-called treaties between the government and the various Indian tribes, but with foreign nations as well. In *Thomas v. Gay,* 168 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740, the Supreme Court of the United States held that an act of May 2, 1890, creating the Territory of Oklahoma, prevails over and against the provisions of a prior treaty between the United States and the Osage Indians. In *Lone Wolf v. Hitchcock,* 187 U. S. 553, 23 Sup. Ct. 216, 47 L. Ed. 299, the Supreme Court held that the power existed in Congress to abrogate the provisions of an Indian treaty, though presumably such power would be exercised only when circumstances arose which would not only justify the government in disregarding the stipulations of the treaty, but which demand, in the interest of the country and the Indians themselves, that it should be so. In *Lone Wolf v. Hitchcock, supra,* it was held that:

"Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government."

In *Tiger v. Western Inv. Co.,* 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, it was held that:

"Congress in pursuance of the law and the established policy of the government has a right to determine for itself when the guardianship which has been maintained over the Indians shall cease."

In view of the general policy of the government extending over almost the entire history of our country, we are warranted in saying that Congress has had at all times, and still has, the authority to pass any law that would be for the best interests of the Indians, and of the advisability, or expediency of such law, Congress alone is the sole and exclusive judge. The mere fact that Taylor was a citizen does not render the guardianship of the government over the Indian lands incompatible. *Tiger v. Western Inv. Co., supra.* Nor is there any merit in the theory advanced by counsel for plaintiffs in error that enforcement of the act of Congress of April 21, 1904, would result in the taking of property without due process of law. This seems to be the settled and established holdings of the courts relative to this question. If Congress, in its wisdom, finds that the best interests of the Indian, and all others concerned, will be best subserved by the abrogation or annullment of a treaty agreement made with a tribe of Indians, it has full power by subsequent act to make the necessary alteration, modification, or amendment. We are of opinion that the position of defendants in the instant case is wholly untenable in the light of the foregoing authorities, which are not only persuasive in reason, and in harmony with the settled policy of the government in its dealings with the Indians, but which are also conclusive and controlling as matters of law on this court on the question involved.

It is true in this as well as in other cases that the settled rule of construction undoubtedly is that repeals by implication will not be favored, and will not be held to exist if there be any other reasonable construction or interpretation by which both acts may be sustained, but in this case that question is not open for discussion, for there is a hopeless and irreconcilable conflict between the two acts of Congress, and in such case the authorities are unanimous that the last will prevail over the former. In this case the act of April 21, 1904, controls and the act of July

1, 1902, in so far as it conflicts with the same, is of no force or effect, being repealed, if not directly, then by necessary implication. Counsel for plaintiffs in error have not cited a single authority in support of their contention. They have pleaded the various acts of Congress, together with the patent to the land and the certificate of removal of disability as issued by the Indian agent, and approved by the Secretary of the Interior, and rely upon the assertion that the act of April 21, 1904, is repugnant to, and violative of, the provisions of the federal Constitution, and the former act of Congress under which the land was allotted. As has been seen, Congress, from the beginning, has exercised a supervisory care over the persons and the estate of the Indians, and, this being a political power, it remains for Congress in the exercise of its discretion and wisdom to say what the policy of the government shall be when dealing with these dependent people. By the act of April 21, 1904, it was deemed expedient to remove the restrictions as to alienation of lands from all except as to minors, and as to homesteads, subject to certain requirements provided for in said act. Whether or not this was a wise provision is not a question for the courts.

At the time of the passage of this act, the patent to Taylor had not been issued. His restrictions as to alienation were removed February 9, 1906. On February 16, 1906, he deeded the land to Campbell, and after the issuance of the patent, and on November 15, 1906, he again deeded it to Whiteheld. The plaintiff obtained title to the land from both Campbell and Whiteheld, and thereafter the power of attorney executed by Taylor to plaintiffs in error was placed of record on March 19, 1907. This, without doubt, is a cloud upon the title of the plaintiff, and he was entitled to have the same canceled and removed, and inasmuch as Congress, as we have seen, had the undoubted right and authority to alter, amend, or modify by subsequent legislation, the provisions of any treaty or agreement made with any tribe of Indians, and inasmuch as it did, by the act of April 21, 1904, by necessary implication, abrogate the provisions of the act of Congress approved June 30, 1902, in so far as restric-

tions or alienability were concerned, it necessarily follows that Taylor, after obtaining the patent to the land in question, and after the passage of the act of Congress April 21, 1904, and the removal of his disabilities according to law, had a right to sell said land. This being true, the plaintiff was entitled to a judgment in the court below. There being no error in the record, the judgment of the district court of Grady county should be affirmed.

By the Court: It is so ordered.