## SHOAT et al. v. OLIVER.

No. 4308.   Opinion Filed May 25, 1915.

(148 Pac. 709.)

1.    INDIANS — Inherited Indian Land — Restrictions — Materiality. Where, in an action to quiet title to a tract of inherited allotted Indian land, the plaintiff claimed under two deeds, one executed October 7, 1905, and not approved by the Secretary of the interior, and the other dated July 31, 1908, which was duly approved, and the defendant claimed under a contract dated July 18, 1907, which was not approved, held unnecessary to decide whether the land was restricted land, for, if it was restricted land, the approved deed of July 31, 1908, carried the title, and, if it was not restricted land, the deed of October 7, 1905, being prior in time to the contract of the defendant, was superior to it. If the land was restricted, both the deed of October 7, 1905, and the contract of July 18, 1907, were void, and no rights could arise under them, and the approved deed of July 31, 1908, was the only valid conveyance.

2.    INDIANS—Restricted Indian Land—Unapproved Conveyance— Validity. In case of restricted Indian land, a paper purporting to be a power of attorney, giving the attorney sole possession of the

land until December 31, 1939, selling the rents to the attorney, and selling the land itself, provided the Indian has the power to convey it, not approved, is void.

3. INDIANS—Indian Lands—Alienation—Removal of Restrictions— Validity of Statute. The act of Congress of May 27, 1908 (35 Stat. L. 312, c. 199), removing restrictions in certain cases in the alienation of Indian lands is constitutional.

(Syllabus by Devereux, C.)

*Error from Superior Court, Grady County;*

*Wm. Linn, Judge.*

Action by W. D. Oliver against Julius Shoat and others. Judgment for plaintiff, and defendants bring error. Affirmed.

This was an action to quiet title to the surplus allotment of Lucy Shoat, a full-blood Choctaw Indian. Judgment for plaintiff, and the defendant brings error.

It appears that Lucy Shoat died on or about the 6th day of April, 1905, leaving surviving her her husband, Julius Shoat, Louie Shoat, and Agnes Shoat, her two minor children, her sole heirs at law. The tribal deed for the surplus allotment, being the land in controversy, was issued September 27, 1905, after the death of Lucy Shoat, and was issued in her name; said deed being issued in pursuance of Act Cong. July 1, 1902, c. 1362, sec. 22, 32 Stat. 643, which provides that, if any person whose name appears upon the rolls shall have died subsequent to the ratification of the agreement, and before receiving his allotment, the lands to which such person shall have been entitled, if living, shall be allotted in his name, and shall descend to his heirs according to the laws of descent and distribution, as provided in chapter 49 of Mansfield's Digest of the Statutes of Arkansas.

On October 7, 1905, Julius Shoat, the husband of the deceased Indian, executed a deed for this land to one A. M. Funkhouser,

but this deed was not approved by any officer of the government. Thereafter, on February 9, 1906, Julius Shoat executed another deed to L. W. Cruce and C. M. Joiner, but notice need not be taken of this instrument, as these defendants disclaimed all interest in the land, and this deed was ordered canceled by the decree. On July 31, 1908, Julius Shoat executed and delivered a warranty deed to C. D. Campbell for the lands in controversy, which deed was duly approved by the county court of Pushmataha county, being the county in which Lucy Shoat died, and the court having jurisdiction of the settlement of her estate. Afterwards Julius Shoat, as the guardian of his two minor children, plaintiffs in error herein, applied to the county court of Pushmataha county for leave to sell the interest of said minors, which was duly granted, and an order made directing the said guardian to make a deed to said Campbell for this land, which was done on the 5th day of July, 1909.

Prior to this, on the 18th day of July, 1907, the defendants in error, Eli P. Williams, Elmer Williams, and Charles Williams, obtained from Julius Shoat a power of attorney, which provided, in substance, that the said Eli P. Williams, Elmer Williams, and Charles Williams, or their survivors, should any. of them die, should have power to attach to said power of attorney a description of all or any part of the land belonging to said Julius Shoat, as heir at law of Lucy Shoat, which description should become a part of the power of attorney; second, Julius Shoat assigned and transferred all of his rights to the possession of said land and improvements thereon, and agreed within one year to put his agents in actual and absolute possession, and, when so put in possession, they were to pay him, on demand, $50, and, should Julius Shoat fail to put his agents in possession, they were authorized to acquire possession of the land and improvements at any time during the life of the power of attorney (which expired December 31, 1939), and to do all acts necessary, in their opinion, to be done to acquire possession of said land, and when in possession to run, manage, and look after the land and improvements; third, he gives these agents

full, sole, and absolute authority to collect and receive all moneys, rents, and income of any kind now due or hereafter to become due on these lands, the agents agreeing during the life of Julius Shoat to account to him, and, after his death, to his heirs and executors, for all moneys and income received by them on account of his interest in said land, except 8 per cent. of the amount actually received by them, which 8 per cent. was in payment for their services. Shoat also agreed not to assign or transfer any part of the rents from this land. Shoat further agreed to sell to his agents an absolute interest in fee simple to any of the rents due from said lands then due, or thereafter to become due, before the expiration of this power of attorney. He further sells, conveys, and transfers to his agents an absolute interest in fee simple in all or any part of said lands that he may lawfully sell or alienate. The power of attorney further gives the agents power to sell this land at any time, in whole or in part, on such terms and conditions as they may see fit, for cash or on time, and to convey and transfer the same by deed, and to receive the consideration and do all other acts necessary to make such sale. The power of attorney further stipulated that it should continue in full force until the 31st day of December, 1939, but that it should not terminate on the death of Shoat, but should continue in full force and effect until the 31st day of December, 1939, and, in case of the death of Shoat, his agents are given full power to do any and all acts in their own names authorized by the power of attorney. The power of attorney further provides that the agents are authorized and have full, sole, and absolute power, to bring or defend, in their own name, or in Shoat's name, and to dismiss at their option, any suit relative to this land and improvements. The consideration for this power of attorney was $1, and other valuable and sufficient consideration.

It does not appear in the record what steps, if any, have ever been taken under this power of attorney, or whether Eli P. Williams, Elmer Williams, and Charles Williams ever got possession of the land. There was a judgment for the plaintiff in the

superior court quieting his title, and directing that the deeds to Cruce and Joiner, and the power of attorney to Eli P. Williams, Elmer Williams, and Charles Williams be canceled, to which judgment exception was duly saved, and the case is brought to this court on error.

*Frank O. Johnson,* for plaintiffs in error.

*Bond & Melton,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). Only two errors in the judgment of the court below are pointed out in the brief: First, that the power of attorney, the substance of which is above set out, was sufficient to defeat the action to quiet title by the plaintiff; second, that the act of Congress approved May 27, 1908 (35 Stat. L. 312, c. 199), removing the restrictions from the sale of inherited Indian lands, was unconstitutional and void.

On the first assignment of error in their brief plaintiffs say:

"The adverse title of W. D. Oliver, defendant in error, to the lands herein, is rested on the three deeds of Julius Shoat set out in the agreed statement of facts herein. The dates and grantees in said deeds are as follows: October 7, 1905, to A. M. Funkhouser; February 9, 1906, to L. W. Cruce and C. M. Joiner; July 31, 1908, to C. B. Campbell. The first two deeds were not approved by the Secretary of the Interior, and the restrictions had not been removed upon the alienation of said lands, and the land is and was the surplus allotment of Lucy Shoat, and at her death descended to her heirs, with all the restrictions against the alienations thereon."

We do not think it necessary to decide whether this was restricted land or not, because, if it was restricted land, the power of attorney required approval as much as the deed, and, not having been approved, if it was restricted land, is void. If the land was not restricted, then the Funkhouser deed, under which the plaintiff in error admits in his brief the defendant in error claims,

preceded in date the power of attorney. So, whichever position the plaintiff in error takes, he must fail. If the land was restricted land, his power of attorney was clearly such an instrument as required approval. The power of attorney, the substance of which is about set out, was much more than one of agency. Until December 31, 1939, it practically took this land away from the Indian. The agents had the power to rent it; they had the right to possession of it; they were given the power to sell it at their own price and on their own terms; and the power of attorney was a conveyance if the Indian had the right to do so. In *Mullen v. Simmons,* 234 U. S. 192, 34 Sup. Ct. 857, 58 L. Ed. 1274, in speaking of the act of Congress in imposing restrictions upon Indian lands, the court say:

" 'Lands allotted * * * shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which the land may be alienated."

In *Starr v. Long Jim,* 227 U. S. 613, 33 Sup. Ct. 358, 57 L. Ed. 670, the court holds that the title to Indian lands was retained by the government for reasons of public policy and in order to protect the Indian against his own improvidence. It was accordingly held in that case that, where a warranty deed was made by Long Jim at a time when he did not have power of alienation, it was against the policy of the law, and could not operate as a conveyance, either by its own force, or by way of estoppel after he had received patent to the land. These cases are directly in point. If this was restricted land, and such a paper as the power of attorney above set out could be sustained without approval by the government, the policy of the government would be undone, because the power of attorney practically takes the land away from the Indian, and gives it to his agents to rent, sell, possess, and to do whatever they please with. We do not decide in this case whether this inherited land was restricted land or not, as we do not think the point necessary to a decision to this question, for in either event the plaintiffs in error must fail, for, as above stated, if it was

restricted land, the power of attorney is void; if it is not restricted land, then the Funkhouser deed is prior in time, and they took with notice of it.

The second point raised by the brief of the plaintiff in error, to use his words, is as follows:

"The Choctaw and Chickasaw Nations were the grantors in the patent to Lucy Shoat, and said patent contained certain restrictions against the alienation of said land, and the patent was approved by the United States, with the restrictions therein, and upon the acceptance of said patent by Lucy Shoat the restrictions became binding upon her and her heirs. The Choctaw and Chickasaw Nations, the grantors in said patent and the owners of said land in fee simple, have never consented to the removal of restrictions contained in said patent against the sale of said land."

This assignment challenges the power of Congress to enact a law removing the restrictions from inherited lands, or from any lands patented by Congress containing the restrictions against the alienations provided by the act of Congress of July 1, 1902 (32 Stat. L. 641). This court has practically passed upon this question in the case of *Williams v. Johnson,* 32 Okla. 247, 122 Pac. 485. The first paragraph of the syllabus is as follows:

"When Congress determines that the best interests of the Indian will be subserved by the abrogation, annulment, amendment, or repeal of a treaty agreement made with a tribe of Indians, it may, by subsequent act, make the necessary modification or amendment, and of the advisability, or expediency, of such change or alteration, Congress is the sole and exclusive judge. The question, being political, and not judicial, is therefore not a proper subject for consideration by the courts."

The converse of this proposition was decided by the Supreme Court of the United States in *Tryer v. Western Investment Co.,* 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, in which it was held that Congress had power to continue supervision over the

rights of full-blood Indians and dispose of their land after the time provided ni the original act has expired.

We therefore recommend that the judgment below be affirmed. By the Court: It is so ordered.