\*GRAYSON et al. v. THOMPSON.

No. 5922—Opinion Filed Nov. 12, 1919.

Rehearing Denied Jan. 6, 1920.

(Syllabus by the Court.)

**1. Indians—Lands—Statute.**

Act of Congress May 27, 1908 (35 Stat. at L. 312, c. 199), entitled, "An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," is a revising act and is intended as a substitute for all former acts

\*Appealed to the Supreme Court of the United States.

relating to the subject of such restrictions, and operated to repeal the provisions of the Act of Congress, April 26, 1906 (34 Stat. at L. 137, c. 1876), and previous congressional enactments in conflict therewith on the same subject.

**2. Statutes—Intention—Construction as a Whole.**

It is a cardinal rule in the construction of statutes that the intention of the Legislature, when ascertained, must govern, and that to ascertain the intent all the various provisions of legislative enactments upon the particular subject should be construed together and given effect as a whole.

**3. Same—Construction—Purpose of Act.**

When the language of a statute is dubious the court, in construing it, will consider the reason and intent of the law to discover its scope and true meaning.

**4. Same—Related Statutes.**

Subsequent congressional legislation may be considered as an aid to the interpretation of prior legislation upon the same subject.

**5. Indians—Lands—Construction of Statute.**

The provisions of section 16 of the Supplemental Creek Agreement (Act of Congress, June 30, 1902, 32 Stat. at L. 500) construed and held to impose restrictions against alienation or limitations on the descent of homesteads allotted to Creek Indians in their own right, who left children born to them after May 25, 1901.

**6. Same.**

Said provision was repealed and superceded by section 9, Act of Congress May 27, 1908 (35 Stat. at L. 199, c. 199), and a deed executed August 3, 1908, by a one-quarter blood Creek Indian to his homestead allotment conveyed fee simple title to the grantee in said deed.

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by Vanhoy Grayson and others against William Thompson. Judgment for defendant, and plaintiffs bring error. Affirmed.

James M. Hays, for plaintiffs in error.

Geo. T. Brown, Robert R. Burns, and C. W. Hollbrook, for defendant in error.

RAINEY, J. This case involves the title to the allotment of one Joe Grayson, a duly enrolled citizen of the Creek Nation of one-fourth Indian blood, who died on the 16th day of November, 1908. On the 3rd day of August of that year Grayson sold the forty acres allotted to him as a homestead to Bernard B. Jones and executed and delivered to Mr. Jones a warranty deed thereto. The defendant in error, William Thompson, claims title through Mr. Jones. This action was in-

stituted by Vanhoy Grayson and Trana V. Grayson, minors, who sue by their next friend, John Schanks, and Pansy May Grayson, a minor, who sues by her guardian, Frank Nash, to recover possession of said land from Mr. Thompson and for damages for withholding the same.

The trial court sustained a demurrer to plaintiff's petition and the only question presented in this court is whether the petition stated a cause of action.

Section 1 of the Act of Congress approved May 27, 1908 (35 Stat. L. 312), entitled, "An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," operated to remove all restrictions from all lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, and it is claimed by defendant that the deed executed by Joe Grayson on August 3, 1908, divested said allottee of all the rights, title, or interest he had in the land described therein, and that the title so conveyed was a fee simple title. Plaintiffs concede that the deed executed by Grayson to Jones divested said allottee of all his right, title and interest in said land, but contend that the only estate he had in his homestead allotment thus attempted to be conveyed was a life estate, and that such was all the estate that passed by virtue of said deed. This contention is based upon the provisions of section 16 of the Supplemental Creek Agreement (Act of Congress June 30, 1902, 32 Stat. L. 500), which is as follows:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of the children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitations, according to the laws of descent herein otherwise prescribed."

The patent conveying the homestead to Grayson and the provisions of the Act of Congress pursuant to which it was issued must be construed together. Choate v. Trapp, 224 U. S. 665. Moreover, the patent did, in fact, provide that it was subject to the provisions of the Supplemental Agreement. In construing the above statute we must ascertain, if possible, the purpose Congress sought to accomplish by its enactment, and when such intent is established it must govern. As an aid to ascertaining such intent the various provisions of congressional enactments upon the same subject should be considered to-

gether and given effect as a whole. Subsequent legislative enactments may also be considered in arriving at the true scope and meaning of the provisions. Board of County Com'rs of Creek Co. v. Alexander, 58 Oklahoma, 128, 159 Pac. 311; Tiger v. Western Investment Co., 221 U. S. 309, 55 L. Ed. 738.

In addition to section 16, supra, of the Supplemental Creek Agreement there are two congressional enactments dealing with the status of Creek homesteads after the death of the allottee. These are section 7 of the Original Creek Agreement (Act of Congress, March 1, 1901, 31 Stat. L. 861), and section 9 of the Act of Congress, May 27, 1908, supra, and are as follows, respectively:

Section 7, Act of March 1, 1901. "The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, free from such limitations."

Section 9, Act of May 27, 1908. "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided further, that the provisions of section twenty-three of the Act of April twenty-sixth, nineteen hundred and six, as amended by this Act, are hereby made applicable to all wills executed under this section."

These provisions clearly disclose the purpose of Congress to make some provision for children of certain enrolled citizens whose births occurred too late to entitle them to enrollment. Under the first legislation on the

subject (section 7 of the Original Creek Agreement) the benefits awarded by the provision accrued to the children born to all citizens after the ratification of the agreement. Under the next legislation on the subject (section 16 of the Supplemental Creek Agreement) the benefits accrued to children born to citizens after May 25, 1901, and under the last act (section 9, Act of May 27, 1908) the benefits accrued only to the surviving children born since March 4, 1906, to members of the Five Civilized Tribes of one-half or more Indian blood. The extent of the benefits are the same under the first two acts, but are somewhat different under the last named act. If Congress intended by section 16, supra, to place certain restrictions upon the alienation of allotted homesteads and to limit the descent thereof, the last legislation enacted repealed and superseded all prior legislation on the same subject. Williams et al. v. Johnson, 32 Okla. 247, 122 Pac. 485; Williams et al. v. Johnson, 239 U. S. 414, 60 L. Ed. 358, 36 Sup. Ct. Rep. 150; Chupco et al. v. Chapman et al., 76 Oklahoma, 170 Pac. 259; McKeever v. Carter et al., 53 Okla. 360, 157 Pac. 56; Shoat et al. v. Oliver, 46 Okla. 683, 148 Pac. 709; Lewis v. Allen et al., 42 Okla. 584, 142 Pac. 384; Welch v. Ellis et al., 63 Oklahoma, 163 Pac. 321; Henley v. Davis et al., 57 Okla. 45, 156 Pac. 337.

It will be noted that in the second act the benefits of the provision were not awarded to children born after the ratification of the Original Agreement and prior to the Act of May 25, 1901, doubtless for the reason that under said latter act such children were placed on the Creek rolls and were given allotments in their own names. After the Act of May 25, 1901, all children born to Creek citizens up to March 4, 1906, were given allotments in their own names. Section 2, Act of Cong. April 26, 1906. The fact that Congress did not award the benefits to the children of Indians of less than one-half Indian blood in the last named act evinces the policy of Congress to give to certain citizens who were considered competent to manage their own affairs a larger control over the disposition of their allotted lands.

Considering all these matters, can we say that Congress, by the language employed in section 16 of the Act of May 25, 1901, intended to award to enrolled citizens of the Creek Nation who had children born since May 25, 1901, only a life estate in their homestead allotments, and to give to all other citizens of said tribe fee simple titles to their homestead allotments? We do not think so, for the reason that in section 3 of the Original Creek Agreement (Act of Cong. March 1, 1901,

supra) it is provided that all the lands of the Creek Tribe shall be allotted among all the citizens of said tribe "so as to give each an equal share of the whole in value, as nearly as may be," and to hold that citizens having children born since said date only received a life estate in the homestead allotted to them would not give them an equal share in value in said land, and the provisions would be inconsistent. The more reasonable construction, it seems to us, is that, while Congress intended that each citizen should take title in fee to both his surplus and homestead allotments so that he would have an "equal share of the whole in value," the homestead allotments of citizens falling within the class provided for in section 16, supra, should be subject to additional restrictions against alienation and the inheritance limited to children born after May 25, 1901. In section 9 of the Act of May 27, 1908, in addition to the words "shall remain" (which appear in the same connection in the Supplemental Creek Agreement) and immediately following said words appears the word "inalienable," which implies that said land is not to be sold or encumbered by or on behalf of said surviving issue. We do not think that by the use of the words "shall remain" in section 16 of the Act of May 25, 1901, supra, Congress intended to create only a life estate for the allottee with a contingent remainder for children who might be born subsequent to said act, but that said words were employed to express the intention of Congress that the homestead allotments of Creek citizens should remain inalienable after the death of said allottees for the use and support of children born to them after May 25, 1901. Under said provision, if such citizen does not leave children born after May 25th, 1901, he is permitted to dispose of his homestead by will free from the limitations imposed by the act. The word "limitation" is evidently used in the provision in the sense of restriction—the existence of such children being a restriction on the right of the allottee to dispose of his homestead by will. In the latter part of this section, wherein it is provided that if the homestead is not disposed of by will (there being no children born since May 25, 1901) it shall descend to his heirs, free from such limitation, the word "limitation" evidently means limitation on inheritance. Viewing the provision, then, as intended as a restriction on the alienation of the homestead and a limitation on the descent thereof, the provision was entirely superseded and repealed by the Act of May 27, 1908, supra.

It follows that on the date of the execution of the deed by Grayson to Jones the allottee

was possessed of a fee simple title to said land, which had been freed of restrictions by the Act of May 27, 1908, and said deed conveyed the title to B. B. Jones, which title subsequently passed to the defendant in this case.

Therefore, the petition did not state a cause of action and the defendant's demurrer was properly sustained.,

The judgment is affirmed.

OWEN, C. J., and HARRISON, PITCH-FORD, JOHNSON, McNEILL, and HIGGINS, JJ., concur.