STATE ex rel. DAWSON, County Supt., v. DINWIDDIE, School Dist. Clerk.

*95 P. 2d 867.*

No. 28955.    Oct. 17, 1939.

Rehearing Denied Nov. 21, 1939.

A. Camp Bonds and Eck Brook, both of Muskogee, for plaintiff in error.

Phil K. Oldham and Crump & Boatright, all of Muskogee, for defendant in error.

D. A. Stovall, of Hugo, amicus curiae.

DAVISON, J. This is an action in mandamus. It was instituted in the district court of Muskogee county by the State of Oklahoma ex rel. E. V. Dawson, County Superintendent of Public Instruction in and for Muskogee County, to compel Dave Dinwiddie, as clerk of school district No. 16 of that county, to examine a petition presented to the petitioner by a group of qualified electors within the district to vote upon a proposed change in the character of the district from a common school district to one authorized to establish and maintain a graded or high school therein, and to be known as a "Union Graded" district. It was also sought to compel Dinwiddie (if he should find the petition contained the signatures of more than one-third of the qualified electors of the district) to attach a certificate thereto so indicating, in order that the petitioner, as county su-

perintendent, might call an election for the purpose above mentioned.

The petition was verified, and upon presentation thereof an alternative writ was issued reciting in substance the facts above stated.

The defendant filed a demurrer. The pleading, under our Code, was inappropriate (sec. 738, O. S. 1931, 12 Okla. St. Ann. § 1459), but under the liberal judicial attitude which prevails in this jurisdiction in connection with matters of pleading, the demurrer was properly treated as an answer "admitting the facts stated and invoking the court's application thereto of the law." Ellis et al. v. Armstrong et al., 28 Okla. 311, 114 P. 327; Lauer v. Clark, County Supt., 84 Okla. 206, 202 P. 1035.

The trial court decided, upon the facts stated, that relief should not be granted, and entered its judgment accordingly. The plaintiff appeals, appearing herein as plaintiff in error. The original order of appearance is thus preserved in this court. Our continued reference to the parties will be by their trial court designation.

The principal question in this case is dependent upon the meaning and effect of section 6946, O. S. 1931 (70 Okla. Stat. Ann. § 285), which reads:

"Any single district shall possess power to establish a graded or highschool subject to the provisions of this article, in like manner as two or more districts united."

The plaintiff in his brief says:

"The only question presented by this plaintiff and the only one for consideration is:

" 'Under the provisions of section 6946, supra, may a single common school district become a union graded school district by following the procedure set out in section 6940, supra.' "

We are of the opinion that the use of the name "union" in connection with graded schools leads to some confusion of thought, and that the substance and purpose of the change in status of the school

district, if permissible, is the matter of primary consideration, rather than the name to be applied to the district subsequent to the contemplated change. The word "union," in its ordinary acceptation, implies a joinder of separate entities, and though names are frequently inappropriately used, the use of the word as an adjective in a measure "begs the real question," since it must be recognized at the outset that a change in status of one school district does not involve union of two or more separate existing districts.

We, therefore, prefer to approach the problem upon consideration of the question: Can a single school district change its status so that it is authorized by law to establish, maintain, and operate its school system in the same manner as a district made up of the union of two or more districts under authority of section 6940, O. S. 1931 (70 Okla. St. Ann. § 281), which provides the method of creating such a united district and contains additional provisions relating to the mode of operating schools therein? If our answer to this question is in the affirmative, we can then decide whether the name "Union Graded School District" is an appropriate or permissible appellation for the district whose status has been thus changed.

The question here presented is one of first impression in this court although section 6946, supra (with changes by amendment to authorize the establishment of high schools) has been a part of the statuory law in this jurisdiction since 1895 (Laws 1895, p. 244, R. L. 1910, sec. 7869). It depends for its solution upon an interpretation of the statutes involved, and we may with propriety resort to the rules of statutory construction to resolve doubt or uncertainty.

Determining the legislative intent is the primary consideration in ascertaining the meaning of any law. Board of Com'rs of Creek County et al. v. Alexander, State Treas., 58 Okla. 128, 159 P. 311; Grayson v. Thompson, 77 Okla. 77, 186 P. 236; Wagner v. Swan, 162 Okla. 95, 19 P. 2d 555; Bryan & Son v. Vernor, 172

Okla. 382, 45 P. 2d 468; Childers v. Paul, 177 Okla. 111, 57 P. 2d 872. In ascertaining the legislative intent, the purpose intended to be accomplished claims a degree of consideration. Brown v. Woods, 2 Okla. 601, 39 P. 413; In re Cleveland's Claim, 72 Okla. 279, 180 P. 252; Blevins v. Graham Co., 72 Okla. 308, 182 P. 247. And the history of the statute may be traced for guiding light (Pure Oil Co. v. Cornish, 174 Okla. 615, 52 P. 2d 832) even though it has passed through a revision (Ramsey v. Leeper et al., 168 Okla. 43, 31 P. 2d 852).

It should be mentioned at this point that section 6940, supra, is a part of the same article as section 6946, supra (art. 8. ch. 219, S. L. 1913, subsequently amended) and that the procedure followed in this case to procure an election for the purpose of changing the status of the district corresponded to the requirements of section 6940, supra. The procedure has not always been exactly as now prescribed. The forerunner of what is now section 6940, supra, was section 1 of art. 5, S. L. 1895, p. 242, R. L. 1910 (reenacted by art. 8, ch. 219, S. L. 1913).

At the time the statutory provisions now under consideration, or their forerunners, first became a part of our law, the one-room, one-teacher school constituted a major portion of our school system. Facilities for transportation to centers of population where more elaborate school systems were in operation were seldom available, and country children were infrequently afforded the educational opportunities available to children living in towns and cities. To a certain, although greatly minimized, extent, these conditions still exist. Their diminution has been due in part to the increasing number of towns and cities, and the development of more adequate facilities for transportation and in part to the operation of laws such as the one now before us, which tend to bring the school to the child.

The Legislature, in recognition of the existing educational problems, sought to make more elaborate educational facilities available, when, in the judgment of

a prescribed majority of the local electorate, such change should be desirable and not prohibitive from a pecuniary standpoint.

It was contemplated that in many instances the desired end could best be accomplished by the union of 'existing common school districts. The provisions of sec. 6940, supra, and following sections of the same article (article 5, S. L. 1895, now article 11, chapter 34, O. S. 1931) authorized such unions, but it was also contemplated that a single district might desire a similar change in its school system. Thus, by the same article (sec. 8, art. 5, S. L. 1895, now 6946, supra), it was authorized to accomplish t h a t change "in like manner as two or more districts united."

A careful review of the statutes involved discloses that there has been a somewhat interchangeable and alternative use of the names by which such schools, or the districts authorized to maintain them, are designated, for instance, in connection with the original act, the article is headed "Union Graded Schools," but in the caption of the chapter, as promulgated by the Territorial Legislature, an alternative designation was made, namely, "Union or Graded School Districts." The confusion in the use of the terms deprives the isolated use of either term of controlling significance.

Regardless of name, it is certain that by the terms of the act a single district is authorized to establish, and, by necessary implication, operate, its school system upon the same basis and in the same manner as two or more districts uniting. It is, of course, obvious that some portions of the article, as for instance, those relating to an apportionment of financial burden between united districts, are inapplicable to a single district operating under the article.

A single district which has brought itself within the article has obviously accomplished a change in its status, and is entitled to a designation which differentiates it from those schools not acting under the act. What that distinctive designation shall be is, perhaps, the least important question in this case.

As a matter of departmental construction, the custom prevails to call such districts "Union Graded." This is because they possess in their dominant aspects most of the characteristics of districts united for the purpose of maintaining and operating the same character of school system. But the name, when applied to a single district which has changed its status, is technically inaccurate and perhaps a different descriptive name should have been used. The matter, however, is not of sufficient importance to warrant judicial interference. In view of the long existence of the custom, the practice will not be interfered with, although, of course, inapplicable provisions of the governing article of our statutes will not obtain in connection with such districts.

We therefore conclude, and hold, that by virtue of section 6946, O. S. 1931, a single common school district may, in the manner prescribed by section 6940, O. S. 1931, change its status, and thereafter establish and maintain its school system as two or more districts united under the provisions of article 11, ch. 34, O. S. 1931.

The defendant also seeks to justify the action of the trial court in denying relief by presenting three counterpropositions. He asserts:

(1) "An election cannot be had during this fiscal year, after the budget has been prepared by the board of directors of school district No. 16, submitted to the excise board, and the appropriations for the district made for this year."

(2) "Mandamus will not be awarded where the issuance would disturb official action or create disorder or confusion."

(3) "Mandamus will not issue against an officer when the duty to be performed is quasi judicial."

We shall assume, without deciding, that these propositions were properly cognizable under the issues as framed in the trial tribunal and may therefore be considered upon appeal.

The first two propositions may be

treated together. It is true, as stated by the defendant, that a writ of mandamus may properly, in the discretion of the court, be denied when its issuance would create disorder and confusion especially in connection with the fiscal affairs of a governmental subdivision of the state. This court has so held. Liberty National Bank v. County Excise Bd. of Jefferson County et al., 175 Okla. 245, 52 P. 2d 51; Herndon v. Excise Board of Garfield County, 147 Okla. 126, 295 P. 223.

However, in this case, such confusion need not follow nor result from the issuance of the writ. In the event the electorate of the school district decide by their vote to change the status of a district, so that it will be possessed of authority to conduct its school system on a different basis, certain problems of finance will necessarily arise, and it may be impossible to operate under the changed condition until the advent of another fiscal year. But the fact that problems of finance will arise does not destroy the authority to make the change. A ridiculous and paralyzing cycle of reasoning would be established, were we to hold that a district could not change its status during a fiscal year unless and until financial arrangements had been made for operation under the changed status, which financial arrangements could not be made upon speculation prior to the change. The first two propositions are therefore without merit.

The third contention, as stated above, must also be denied because even if the act sought to be compelled does involve discretion of a judicial nature and therefore could be classified as quasi judicial (a question which we do not decide), no attempt is being made to dictate the result which shall be announced by the clerk. He can only be required by the writ to act in the matter of examining the petition and to certify *the petition,* if it in fact contains sufficient signatures. The performance of even a judicial act can be compelled by mandamus, although judicial discretion or the decision to be made cannot be controlled thereby. Harding v. Garber, Judge, 20 Okla. 11,

93 P. 539, considered in connection with Winfrey v. Benton et al., 25 Okla. 445, 106 P. 853. It was the mandatory duty of the clerk to act in accord with the statute.

The statement is also made, though not briefed by defendant in error, that plaintiff herein has no authority to maintain this action. The plaintiff is the State of Oklahoma. The state is a proper party plaintiff. Stubbs v. Excise Board of Muskogee County et al., 173 Okla. 341, 49 P. 2d 83; Thompson v. State ex rel. Cooksey, 25 Okla. 741, 108 P. 398.

The question of whether the county superintendent is a proper relator is an entirely different question. State ex rel. Murray, for Use and Benefit of Sapulpa State Bank, v. Pure Oil Co., 169 Okla. 507, 37 P. 2d 608. It is not presented by the defendant, and since it does not affect the jurisdiction of the court over the subject matter, will not be considered. We express no opinion in connection therewith.

The judgment of the trial court is reversed, with directions to proceed in a manner not inconsistent with this opinion.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and CORN, JJ., concur. GIBSON, HURST, and DANNER, JJ., dissent. RILEY, J., absent.

---

HURST, J. (dissenting). I think the majority reaches the wrong conclusion on the single question presented, and the error is caused by confusing the terms "school district" and "school." The term "school district" has reference to a municipal subdivision of the state and derives its powers by delegation from the state. It is a legal entity organized as an agency of the state to maintain the "schools." 24 R. C. L. 562, § 6. The term "school" denotes an institution for instruction or education, or a collective body of instructors and pupils. 56 C. J. 167. The "school district" has certain powers given it by the Legislature, while the school is not a legal entity and has no powers.

Section 6940, O. S. 1931 (70 Okla. St. Ann. § 281), has to do with the single question of the creation, management, and authority of Union Graded School *Districts*. It plainly says that such a district is to be formed by "two or more *adjacent school districts*." The petition calling the election must be signed by "*one-third of the legal voters of each district*." The clerks of the "*respective districts*" must certify the list of legal voters. Notices of the special meeting called to pass upon the question must be posted in "each of the *school districts*" to be united. The meeting must be held in "one of the districts." If, at the meeting, the requisite number of voters vote in favor of forming a Union Graded School District, it is the duty of the county superintendent to declare "the original districts comprising the Union Graded School District disorganized." Thus this section requires two or more school districts to form a Union Graded District. The creation of different kinds of school districts rests solely upon authority of laws passed by the Legislature, and we must look to the language of the statutes for such authority. To say that section 6940 authorizes a single common school district to convert itself into a Union Graded School District obviously does violence to the plain language of the statute.

In fact, I do not understand that it is so contended, but it is said that section 6946, O. S. 1931 (70 Okla. St. Ann. § 285), authorizes a single common school district to change its "school system" so that it may become, in practical effect, a Union Graded School District. The majority opinion says that a common school district is authorized to change its school system "in like manner as two or more districts united." But section 6946 has to do with the sole question of establishing in "any single district" a "graded or high school." The section says nothing about establishing a *school district*. Nor does it say anything about establishing a *school system* which will give a common school district the same powers as a union graded school district. The statute simply gives authority to establish a graded school or a *school* for higher education. The phrase "in like manner as two or more districts united" has reference only to the procedure to be followed by a single district in establishing such *school*. To say that the statute authorizes the creation of a "school district" or a legal entity with the same powers as a union graded school district is a plain violation of the language of the section and fails to observe the distinction between a "school" and a "school district." The fact that by departmental construction this distinction has been overlooked and the terms "school" and "school district" have been loosely and erroneously used synonymously is no reason to perpetuate the error in the decisions of this court.

It appears from the statement of facts that the majority opinion here involved seeks to change the character of the common school district so as to merely authorize the establishment of a high school. But the petition does not merely seek to establish a high school. There is doubt that it has such authority. The application for the writ of mandamus recites that the circulated petition which is sought to be approved asks "that plaintiff call an election in said district for the purpose of voting on the abolition of school district No. 16, and establishing a 'union graded' school district in lieu thereof."

For these reasons, I dissent to the opinion of the majority.

I am authorized to say that Mr. Justice GIBSON concurs in this dissent.