WATERS v. STEVENS, Adm'r, et al.

No. 32618. Jan. 7, 1947.

Rehearing Denied Jan. 28, 1947.

*176 P. 2d 808.*

Marvin T. Johnson, of Tulsa, for plaintiff in error.

Lawrence Mills and R. R. Linker, both of Tulsa, for defendants in error.

WELCH, J.  This is an action by George S. Stevens, administrator of the estate of Edgar J. Waters, deceased, and Mary J. Waters, heir of Edgar J. Waters, deceased, against Rubie E. Waters, to quiet title to certain real estate and personal property.

Plaintiff's petition alleged possession for distribution to the heir certain described personal and real property in the estate of Edgar J. Waters, deceased. That the property was acquired by the deceased and defendant during the existence of their marriage relation. That they were divorced on March 27, 1944.

That on May 3, 1944, the deceased and defendant made a property settlement, at which time they executed certain deeds each to the other, under which they divided their real property. That deeds were found in the possession of the deceased after his death describing the premises involved. That as of the same date deeds were recorded reflecting conveyances from deceased to defendant of real estate of more value than that retained by deceased and here involved.

That on the said date, May 3, 1944, the parties executed a written contract in which they divided certain personal property, one of the items being 1,000 shares of stock.

Plaintiff  alleged adverse claims of interest by defendant and prayed for judgment quieting title.

Defendant filed answer admitting the allegations of marriage and divorce of the parties, but denied there was ever any property settlement or change in the title and ownership of the property prior to the death of Edgar J. Waters.

Defendant alleged that at the time of the death of Edgar J. Waters she and deceased owned in joint tenancy all the property described in plaintiff's petition, and upon the death of Edgar J. Waters, defendant became the sole owner of the property.

Defendant prayed for judgment quieting title and for rents and profits.

Judgment was entered for the plaintiff, and defendant appeals.

The record discloses that Edgar J. Waters and the defendant were married February 13, 1932, and thereafter accumulated the property in controversy. They were divorced March 27, 1944, and no mention of property was made in the decree. Edgar J. Waters died July 18, 1944.

On May 3, 1944, Edgar J. Waters and defendant appeared before H. G. Chapman, a notary public, and, according to the testimony of Chapman, stated that they were dividing their property. Edgar J. Waters produced four deeds dated May 3, 1944, to properties in which title had been taken in the name of both parties. All four instruments were signed by both parties and the acknowledgment thereto was signed and sealed by the notary public. There was no name appearing as grantee in either of the instruments and no names appearing in the acknowledgments to each instrument. There was also produced at the time an instrument styled "agreement" which was signed by both parties and

an acknowledgment in blank attached thereto signed and sealed by the notary public. In this instrument both parties acknowledged separate ownership in each of the parties of certain described personal property, among which it was stated that Edgar J. Waters owned 1,000 shares of a certain stock. The instrument gave the location of certain real property owned by defendant and contained the statement that the real property was conveyed by Edgar J. Waters to defendant, clear and unencumbered, by general warranty deeds.

There is no evidence of any further transactions between the parties after May 3, 1944. Edgar J. Waters died July 18, 1944. Thereafter the four deeds and the signed agreement were discovered in his bank lockbox by the administrator.

On March 15, 1944, deeds to two pieces of property to defendant were executed by Edgar J. Waters and defendant and acknowledged March 17, 1944. These deeds conveyed the real property mentioned in the agreement of May 3, 1944. Both of these deeds recited that the consideration was "property settlement." One of the deeds of March 15th conveyed lot four (4), block seven (7), East Lynn addition; lot four (4), together with lot five (5), of the same block was subject to a mortgage at the time. On March 20, 1944, the mortgage as to lot four (4) was released. Lot five (5) is one of the properties described in the conveying clause of one of the deeds signed on May 3, 1944, and found in the deceased's lockbox.

The release of mortgage of lot four (4) was filed for record on May 3, 1944, and the deeds executed on March 15th, conveying lot four (4) and the other property to defendant were filed for record by defendant on May 4, 1944.

The defendant testified that she and the deceased at no time agreed to divide their property or had a property settlement. That she signed the blank deeds and instrument which referred to personal property on May 3, 1944, for the reason that she was leaving town. That she frequently signed deeds in blank to facilitate their trading in real estate. That no statement was made to the notary public concerning division of property.

All assignments of error are presented under four propositions as follows: (1) The property in controversy was held by Rubie E. Waters and Edgar J. Waters as joint tenants, and upon the death of Edgar J. Waters, Rubie E. Waters became the owner of all interest as the surviving tenant. (2) The blank deeds found in the lockbox of Edgar J. Waters, after his death, did not operate to convey anything and were not admissible in evidence. (3) There was no contract of property settlement made or proved as contended for by the plaintiff, and if any such thing had been attempted, it was incomplete and ineffective to destroy the existing joint tenancy. (4) The contract for deed made to Edgar J. Waters and Rubie E. Waters created a tenancy in common and Rubie E. Waters remained the owner of an undivided one-half interest in any event.

The issues in this case may be determined upon the questions presented by propositions 2 and 3, and upon an adverse determination thereof propositions 1 and 4 require no discussion.

There is no conflict in the testimony except in relation to the alleged property settlement. All of the property mentioned was acquired by the joint earnings of the two Waters while they were man and wife and title to all the real estate was taken in the name of both of them and likewise title to the certificate of stock. Whether they were joint tenants or tenants in common is immaterial in determining the question as to whether they entered into a contract for the division of the property and the effect of that contract if entered into. The court found that where there was a division agreement entered into between the parties affecting the property involved and that the effect of the

agreement was to divest the title of the defendant.

The execution of the deeds to defendant on March 15, 1944, a date prior to the divorce, with consideration therein stated as "property settlement", is some evidence that the parties were discussing division of property at that time.

Subsequent to the divorce the parties appeared before a notary public on May 3, 1944, and executed the four deeds retained by the deceased, and according to the testimony of the notary public the parties stated at the time that they were dividing their property. At the same time the parties signed a written agreement wherein they declared the separate ownership of each of various items of personal property and the agreement stated the location of two tracts of real estate and that defendant had received conveyances by warranty deeds to said real property and free of encumbrance. One of the tracts was covered by mortgage at the time of the execution of the deed on March 15, 1944. A release of the mortgage as to said tract was filed for record on May 3, 1944. The next day, May 4, 1944, the defendant filed for record deeds to the two properties mentioned, which deeds, as above mentioned, contained the words "property settlement."

We think the evidence is sufficient to support a finding by the trial court that there was a property settlement between the deceased and the defendant whereby the deceased was to take the properties described in the four deeds found in his lockbox and the defendant to take the properties described in the recorded deeds and each to separately own the personal property as provided in the written agreement.

As stated in proposition 2, it is the contention of defendant that the deeds found in the lockbox of the deceased, having blanks left for names of the grantees, were inoperative as conveyances and were not admissible in evidence. Under the testimony of the notary public the instruments were clearly admissible on the question of the agreement to divide the property and the terms of the agreement. Whether the deeds were sufficient as conveyances under the circumstances of this case need not be decided. The deceased made proper conveyances to the defendant and having fully performed his part of the agreement, the right in equity to compel proper conveyances by the defendant was established.

The rule is stated in the first paragraph of the syllabus in King et al. v. Gant, 77 Okla. 105, 186 P. 960, as follows:

"A suit in equity may be maintained to enforce specific performance of an oral contract for the conveyance of land, where the moving party has fully performed the terms of such contract on his part."

Edgar J. Waters fully performed his part of the agreement to divide the property by delivering valid conveyances to the defendant. The defendant cannot repudiate the agreement by asserting the invalidity of the conveyances delivered to her. Under such circumstances equity will enforce the agreement by decreeing specific performance of it, or by quieting title as if valid deeds had been delivered.

"Where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be perpetrating a fraud upon him to allow the other party to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute and will enforce the contract by decreeing specific performance of it, or by granting other appropriate relief, such as quieting title, . . ." 27 C. J. p. 343.

The judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, CORN, DAVISON, and ARNOLD, JJ., concur.