2001 OK 104

**Representative Fred MORGAN, Minority Floor Leader of the Oklahoma House of Representatives, et al., Petitioners,**

v.

**Tom DAXON, Director of State Finance, and Robert Butkin, State Treasurer, Respondents.**

No. 96613.

Supreme Court of Oklahoma.

Dec. 4, 2001.

*ORDER*

¶ 1 Original jurisdiction is assumed. We find that the petitioners have standing to bring the tendered issue. *Hendrick v. Walters*, 1993 OK 162, ¶ 5, 865 P.2d 1232, 1236–1237. The challenged bill contains more than one subject and is therefore unconstitutional under the provisions of Const. art. V, §§ 56 and 57 of the Constitution of the State of Oklahoma. *Campbell v. White*, 1993 OK 89, ¶ 20, 856 P.2d 255, 263.

¶ 2 The "Motion to Intervene as Respondent," filed by Stratton Taylor, President Pro Tempore of the Oklahoma State Senate, is granted. The Intervenor's request that the Court continue this case is denied.

¶ 3 Let writ of prohibition issue prohibiting the respondents from releasing any funds to state agencies pursuant to House Bill 1570 as passed by the 48th Oklahoma Legislature.

¶ 4 DONE BY ORDER OF THE SUPREME COURT THIS 4TH DAY OF DECEMBER, 2001.

¶ 5 CONCUR: HARGRAVE, C.J., WATT, V.C.J., HODGES, OPALA (BY SEPARATE WRITING), BOUDREAU, WINCHESTER, JJ.

¶ 6 CONCURS IN PART; DISSENTS IN PART: KAUGER (BY SEPARATE WRITING), J.

¶ 7 DISSENT: LAVENDER, (JOINS SUMMERS, J.), SUMMERS (BY SEPARATE WRITING), JJ.

**OPALA, J., concurring.**

¶ 1 Neither the polite legal language of the court's formal order nor the texts offered by nonconcurring justices unveil the eclipsed reality of today's controversy. It is a *clash of wills unable to reach a compromise—the interaction of an immovable object* confronting the *irresistible force.* Each side *seems utterly unwilling* to agree with the other on who should bear the *political blame* for the passage of the infirm legislation and how the quantum of potential disadvantage (likely to flow from the condemned enactment) should be allocated.

¶ 2 The primary focus of today's pronouncement is on *the hegemony of the State's constitution.* Although the order *settles,* as it must, the vitiating infirmity present in text of the bill under scrutiny, the court's message .is not entirely deaf or oblivious to its *additional,* equally important *role*—that of preventing, so far as possible, a consequential destruction of government *either by* a total shut-down *or by* partial disruption of its services.

¶ 3 I am. confident that at the rehearing stage—*both sides* will assist us in the task of cushioning the immediate negative fallout from today's sentence of nullity by crafting a sensible solution that will satisfy the warring parties and prevent serious harm to the people they are duty-bound to serve.

¶ 4 The nonconcurring justices' prophecy of gloom and doom offers us a less–than realistic prediction of what is likely to unfold in postdecisional stages. The *immediate effect* of today's command *may be stayed* on motion to suspend the writ's present effectiveness. The parties will on rehearing have ample opportunity to guide the court to a reasonably safe remedy by carefully exploring through the arcana of an *unforeshadowed change* in today's course of constitutional jurisprudence. See *Strelecki, et al v. Oklahoma Tax Commission,* 1993 OK 122, 872 P.2d 910, 913.

**KAUGER, J., concurring in part and dissenting in part:**

¶ 1 I agree that: 1) the petitioners, members of the House of Representatives, have

standing; 2) HB 1570 violates the single subject rule of the Okla. Const. art. 5, §§ 56 and 57; 3) the President *Pro Tempore* should be allowed to intervene; and 4) the cause should not be continued.

¶ 2 My concern is that the order automatically sets an instantaneous "drop-dead" date. Ordinarily, the majority of this Court's decisions are not considered final until the twenty-day time frame for filing rehearing has expired or the mandate has issued in the cause.[1] Here, because of the peculiar procedural posture, the twenty-day rehearing period does not stay the effectiveness of the order. Original proceedings are treated differently pursuant to Rule 1.193, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 which provides in pertinent part:

"In all original proceedings other than those to review a decision of the Workers' Compensation Court or to impose bar discipline, the decision of this Court, unless it is stayed with or without bond, shall become effective when its opinion or order is filed with the clerk. . . ."

¶ 3 The effect of today's order-an original proceeding—is immediate upon its filing with the Court Clerk. Because Rule 1.193 results in these litigants being treating differently from the norm, I would suspend the rule and allow the rehearing process to proceed-pro-

viding the parties an opportunity to challenge the order in the rehearing process-an option which does not exist absent the Court's staying the effectiveness of Rule 1.193, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1.

¶ 4 The Legislature continues in special session.[2] Should the Governor choose to add the questioned funding issues to the legislative agenda,[3] the possible disruptions to state payroll or contracting procedures pointed out in the dissent could be minimized or totally eliminated. I would afford this opportunity by staying the effectiveness of the order until rehearing proceedings could take their ordinary course.[4]

¶ 5 Because the respondents, the Director of State Finance and the State Treasurer, are required to withhold payments once the order is filed, irreparable damage may be done in a situation where none need occur. Therefore, I dissent from the majority order only to the extent that it does not provide the usual twenty-day rehearing period.

### SUMMERS, J., Dissenting, and joined by LAVENDER, J.

¶ 1 I respectfully dissent from the order of the Court. The Court unnecessarily departs from the precedent established in a long line

---

1. See, Rule 1.13, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 providing in pertinent part:

    "(a) **Petition.** Applications for rehearing and a brief in support thereof, unless otherwise ordered by the Court, shall be made by petition to the Court, signed by counsel, and filed with the Clerk within twenty (20) days from the date on which the opinion in the cause is filed. . . ." [Emphasis in original.]
    In original proceedings involving review of a decision of the Workers' Compensation Court or those imposing bar discipline, the rule is the same. See, Rule 1.193, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1.

2. Special sessions may be called by the Legislature or by the Governor. Because the session is in progress, it is unnecessary for the members to convene through the two-thirds vote required by art. 5, § 27A. The Okla. Const. art. 5, § 27 provides:

    "The Legislature shall hold regular annual sessions as herein provided, but this shall not prevent the calling of special sessions of the Legislature by the Governor."
    The Okla. Const. art. 5, § 27A provides:

    "(1) The Legislature may be called into special session by a written call for such purposes as may be specifically set out in the call, signed by two-thirds (⅔) of the members of the Senate and two-thirds (⅔) of the members of the House of Representatives when it is filed with the President *Pro Tempore* of the Senate and the Speaker of the House of Representatives who shall issue jointly an order for the convening of the special session.
    (2) Nothing in this section shall prevent the calling of a special session of the Legislature by the Governor, as provided by the Constitution of the State of Oklahoma."

3. The Okla. Const. art. 6, § 7 provides:

    "The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration."

4. Rule 1.13, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch.App. 1.

of its prior opinions, and unnecessarily creates a state constitutional crisis *immediately affecting the payrolls and contracts of many state agencies and their employees.*

¶2 House Bill No. 1570 of the Forty–Eighth Legislature, First Regular Session, referred to in legislative circles as this year's "Reconciliation Bill", contains one-hundred and eleven (111) sections.[1] On June 8, 2001, the Governor of the State of Oklahoma vetoed two sections of the Bill, sections 38 and 41, stating that legislature failed to make the appropriations referenced in the two sections, and he then signed the Bill. Sections of H.B. No. 1570 have stated effective dates of July 1, 2001 and one section September 1, 2001. The act contains an emergency clause stating an effective date after passage and approval. 2001 Okla.Sess.Laws Ch. 433 §§ 109, 110, 111.[2] House Bill No. 1570 is in effect at this time.

¶3 Today the Court rules that House Bill No. 1570 is unconstitutional. The Bill appropriates or authorizes expenditures for many state agencies and departments, including funds for common education.[3] Before discussing the Court's order, I shall first point out the exact agencies and funds affected by the one-hundred and eleven (111) sections of H.B. No. 1570:

**House Bill No. 1570 makes the following appropriations:**

1. $14,610,942.00—support of public schools. (§ 1 of H.B. No. 1570 amends H.B. No. 1505 and reduces the amount appropriated from $26,586,268.00).

2. $50,000.00—State Board of Education for Instructional, Cooperative Technological Education. (§ 3).

3. $1,314,000.00—State Board of Education for a program for teachers on neuro-developmentally based student learning differences.(§ 5).

4. $1,000,000.00—Oklahoma Center for the Advancement of Science and Technology. (§ 10).

5. $4,914,356.00—Oklahoma State Regents of Higher Education. (§ 11 amends S.B. No. 239 and reduces the amount appropriated from $28,437,608.00).

6. $500,000.00—Oklahoma State Regents of Higher Education for the Fred Jones Museum of Art at the University of Oklahoma. (§ 14).

7. $100,000.00—Oklahoma State Regents of Higher Education for a Native American Language Curator for the Sam Noble Museum of Natural History and Fred Jones Museum of Art at the University of Oklahoma. (§ 15).

8. $213,700.00—State Board of Education from Education Reform Revolving Fund for financial support of public schools. (§ 20).

9. $206,397.00—Oklahoma Center for the Advancement of Science and Technology (§ 21).

10. $726,100.00—Office of State Finance. (§ 22).

11. $250,000—Office of the Governor. (§ 23).

12. $50,000.00—Legislative Service Bureau. (§ 24).

13. $69,198.00—Tax Commission for implementation federal refund offset program. (§ 26).

14. $100,000.00—Oklahoma Department of Commerce for contractual responsibili-

---

1. 2001 Okla.Sess.Laws Ch. 433 (West).

2. I need not address the effective date of an act that contains both an express effective date and an emergency clause. This Court has discussed such circumstances. *See, e.g., George v. Randels,* 1949 OK 58, 207 P.2d 248; *Cities Service Oil Co. v. Oklahoma Tax Commission,* 1942 OK 307, 129 P.2d 597.

3. An appropriation is the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand. *Smith ex rel. State v. State Bd. of Equalization,* 1981 OK 57, 630 P.2d 1264, 1266. The term "appropriation" need *not* be used as part of the designation of a lawful appropriation. *Edwards v. Childers,* 102 Okla. 158, 228 P. 472, 473–474 (1924). I use the express language of H.B. No. 1570 in dividing the various categories, and I express no opinion on whether a particular item is an appropriation although the term "appropriation" is not used to describe that item in the Bill.

ties involving Central Oklahoma Economic Development District. (§ 28).

15. $150,000.00—Oklahoma Department of Commerce for contractual responsibilities involving Eastern Oklahoma Economic Development District. (§ 29).

16. $50,000.00—Oklahoma Department of Commerce for contractual responsibilities involving Kiamichi Oklahoma Economic Development District. (§ 30).

17. $1,365,751.00—Oklahoma State Department of Health. (§ 33 amends H.B. No. 1518 and reduces appropriation from $1,430,751.00).

18. $179,000.00—Department of Mental Health and Substance Abuse Services. (§ 42).

19. $980,000—Department of Mental Health and Substance Abuse Services. (§ 43 amends H.B. No. 1564 and changes language relating to the purpose of the appropriation).

20. $40,000.00—Department of Mental Health and Substance Abuse Services for specified contractual services. (§ 48).

21. $340,278,606—Oklahoma Health Care Authority. (§ 53 amends H.B. No. 1564 and increases the amount appropriated from $339,078,606.00).

22. $12,297,305.00—Oklahoma Health Care Authority. (§ 54 amends H.B. No. 1564 and decreases the amount appropriated from $17,297,305.00).

23. $9,700,000.00—University Hospitals Authority. (§ 58 amends H.B. No. 1518 by increasing the appropriation from $9,600,000.00)

24. $100,000.00—Department of Rehabilitation Services (§ 61).

25. $23,032.00—Office of Juvenile Affairs for contractual services from Duncan Community Intervention Center. (§ 63).

26. $24,021,961.00—Department of Agriculture (§ 68 amends H.B. No. 1529 increasing the appropriation from $21,521,961.00).

27. $5,000,000.00—Department of Agriculture from Special Cash Fund of State Treasury (§ 69 amends H.B. No. 1529 decreasing the appropriation from $7,500,000.00).

28. $10,097,233.00—Oklahoma Historical Society. (§ 71 amends S.B. No. 203).

29. $200,000.00—Department of Public Safety. (§ 76).

30. $1,514,155.00—Department of Transportation. (§ 80).

31. $28,750.00—State Fire Marshal for an additional employee. (§ 83).

32. $200,000.00—Oklahoma Indigent Defense System. (§ 85).

33. $291,600—Oklahoma Supreme Court for the District Courts. (§ 86).

34. $120,000.00—Department of Commerce. (§ 97).

35. $20,000.00—Department of Commerce. (§ 98).

36. $35,000.00—Department of Commerce. (§ 99).

37. $100,000.00—Department of Commerce. (§ 100).

38. $50,000.00—J. M. Davis Memorial Commission. (§ 101).

39. $137,000.00—Will Rogers Memorial Commission. (§ 102).

40. $25,000.00—Department of Human Services. (§ 103).

**House Bill No. 1570 authorizes the following expenditures:**

1. $11,761,626.00 by State Board of Education for public schools.(§ 2).

2. $11,761,626.00 by Oklahoma State Regents for Higher Education from the Oklahoma Tuition Scholarship Revolving Fund. (§ 12).

3. $11,761,626.00 by Oklahoma State Regents for Higher Education from the Higher Education Capital Revolving Fund. (§ 13).

4. $2,5000,000.00 by The Commissioners of the Land Office from the Public Building Fund and the Greer Fund. (§ 18).

5. $23,428,344.00 by Oklahoma Health Care Authority from the Tobacco Settlement Fund (§ 55 amends H.B. No. 1564 and increases the authorization from $19,628,344.00).

6. $65,000.00 by Department of Public Safety for the lease payment of the

Clinton/Sherman Industrial Complex for the fiscal year ending June 30, 2002. (§ 77 amends H.B. No. 1549 by changing the date of the year).

7. $171,311.00 by Department of Public Safety for Board of Tests for Alcohol and Drug Influence. (§ 78 amends H.B. No. 1549 by both changing the amount and fiscal year for the expenditure).

8. $3,500,000.00 by Department of Public Safety from a revolving fund for the purchase and equipping of vehicles. (§ 94 amends H.B. No. 1549 by increasing amount, changing fiscal year and other language).

**House Bill No. 1570 apportions the following amounts:**

1. $563,562.00 to Small School Cooperatives. (§ 4 amends H.B. No. 1505 and increases the amount apportioned from $513,562.00).

2. Up to $250,000.00 for telecommunications and other purposes determined by State Board of Education. (§ 4).

3. $55,852.00 Chickasha School District for students at the Jane Brooks School for the Deaf. (§ 4).

4. $53,378.00 for the Oklahoma Science and Engineering Fair. (§ 4).

5. $405,870.00 for Oklahoma State System of Higher Education for implementing telecommunications curriculum statewide. (§ 4).

6. $300,000.00 to independent school districts meeting a small school incentive grant requirements. (§ 4).

7. $40,000.00 to a non-profit arts center for a Special Educator Professional Development Program. (§ 4).

8. $500,000.00 for breast and cervical cancer detection screenings from amount appropriated in H.B. No. 1564 to State Department of Health. (§ 39).

9. $50,000.00 for teen abstinence education from amount appropriated in H.B. No. 1564 to State Department of Health. (§ 40).

**House Bill No. 1570 transfers funds to specified state agencies and accounts:**

1. $300,000.00 transferred to State Election Board by Director of State Finance. (§ 31).

2. $544,900.00 transferred to the J.D. McCarty Center for Handicapped Children Revolving Fund from the J.D. McCarty Center for Developmentally Disabled Children. (§ 32).

3. $250,000.00 transferred to the Tobacco Cessation and Prevention Revolving Fund from the State Department of Health. (§ 36).

4. $600,000.00 transferred to the Oklahoma Department of Corrections from Department of Mental Health and Substance Abuse Services. (§ 44)

5. $700,000.00 transferred to the Oklahoma Department of Corrections from Department of Mental Health and Substance Abuse Services. (§ 45)

6. $2,000,000.00 transferred to the Public Transit Revolving Fund by the Department of Transportation. (§ 81 amends S.B. No. 249 and increases the amount transferred from $1,5000,000.00).

**House Bill No. 1570 set the budgets and/or number of employees for certain departments and agencies:**

1. Oklahoma School of Mathematics and Sciences. (§§ 7, 8 amends H.B. No. 1505 and increases a total amount from $7,197,291.00 to $7,327,291.00 and full-time employees from 73 to 75).

2. Oklahoma Department of Career and Technology Education. (§ 9 amends H.B. No. 1505 and increases a salary from $94,000.00 to $105,000.00).

3. Oklahoma Board of Private Vocational Schools. (§ 17 amends H.B. 1529 and increases the budget item from $174,760.00 to $184,760).

4. Oklahoma Commission for Teacher Preparation. (§ 19 amends H.B. 1505 increasing a total amount from $6,858,097.00 to $8,368,522.00).

5. Oklahoma Merit Protection Commission. (§ 25 amends S.B. 222 and increases amounts of several budgeted items).

6. Oklahoma Tax Commission. (§ 27 amends S.B. No. 217 increasing amount budgeted for Taxpayer Services).

7. State Department of Health. (§ 34 amends H.B. No. 1518 and decreases certain budget items, and § 35 amends H.B. No. 1518 decreasing and increasing certain budget items and adding entities for contractual services).

8. Department of Mental Health and Substance Abuse Services. (§ 46 amends H.B. No. 1518 increasing and decreasing certain amounts).

9. Oklahoma Commission on Children and Youth (§ 52 amends S.B. No. 230 by increasing certain budgeted amounts)

10. Oklahoma Health Care Authority (§ 56 amends H.B. No. 1518, budgets funds in categories and amounts and increases full-time employees).

11. Office of Juvenile Affairs (§ 60 amends S.B. No. 235)

12. Department of Rehabilitation Services (§ 62 amends O.S.L.2000, Ch. 395, § 17).

13. Oklahoma Tourism and Recreation Department (§§ 65, 66, 67 amends H.B. No. 1535).

14. Oklahoma Water Resource Board (§ 70 amends S.B. No. 225)

15. Oklahoma Historical Society (§ 72 amends S, B. No. 203).

16. Oklahoma Supreme Court for District Courts, (§ 87 amends H.B. No. 1539 by increasing budget for court operations for District Courts)

17. Oklahoma Supreme Court for District Courts, (§ 88 amends H.B. No. 1539 by changing the schedule for which certain employees are compensated).

18. Oklahoma Supreme Court for District Courts, (§ 89 amends H.B. No. 1539 by increasing the number of full-time employees of the District Courts).

19. Oklahoma Supreme Court (§ 90 states that it amends H.B. No. 1539, but no change is shown by the amendment).

20. Oklahoma Attorney General (§ 91 amends H.B. No. 1545 by decreasing the total budgeted).

21. District Attorneys Council (§ 92 amends H.B. No. 1545 by changing budgeted amounts).

22. Ethics Commission (§ 93 amends S.B. No. 242 by changing budgeted amounts).

**House Bill No. 1570 lifts fiscal year limitations on certain appropriations:** (§ 57)

1. Appropriations made by Sections 73 through 79, 81, 82, 84, 85, 94, 95, 98, and 101 of House Bill No. 1564 are made available for encumbrance and expenditure for thirty months from March 26, 2001. Those sections of H.B. No. 1564 and the agencies they involve are as follows:

§ 73 Oklahoma Commission on Children and Youth

§§ 74, 75 Office of Handicapped Concerns

§ 76 Oklahoma Human Rights Commission

§§ 77, 79, 81 Department of Human Services

§ 78 Department of Human Services (vetoed by the Governor)

§ 82 Department of Rehabilitation Services

§ 84 Oklahoma Indian Affairs Commission

§ 85 Office of Juvenile Affairs

§§ 94, 95 University Hospitals Authority

§ 98, 101 Oklahoma Health Care Authority

**House Bill No. 1570 also amends:**

1. 70 O.S.1991 § 16–114 involving textbook allocation of funds and requiring the State Board of Education to make its determination each year instead of 1997–1998 and each year thereafter. (§ 6).

2. 70 O.S.Supp.2000 § 3206.5 involving the Oklahoma State Regents for Higher Education and maximum value of lease transactions, and useful life of, of personal property. (§ 16).

3. 63 O.S.Supp.2000 § 1–107.1 involving costs for Eldercare Programs. (§ 37).

4. H.B. No. 1518 involving medications purchased by the Department of Mental Health and Substance Abuse Services. (§ 47).

5. 43A O.S.Supp.2000 § 3–101.4 by extending from June 30, 2001 to June 30, 2002, the Transition Oversight Panel for the Deinstitutionalization of Eastern State Hospital. (§ 49).

6. 43A O.S.Supp.2000 § 3–101.5 by extending from June 30, 2001 to June 30, 2002, the Joint Legislative Oversight Committee on the Eastern State Hospital Transition. (§ 50).

7. 43A O.S.Supp.2000 § 3–701 involving medical and surgical care of individuals in the custody of the Department of Corrections. (§ 51).

8. 10 O.S.Supp.2000 § 7302–3.6 involving contractual authority of the Office of Juvenile Affairs. (§ 64).

9. O.S.L.2000 Ch. 316, § 4 involving the purchase of facilities by the Council on Law Enforcement Education and Training. (§ 73).

10. 57 O.S.Supp.2000 § 332.4 involving payments to Chair and members of the Pardon and Parole Board. (§ 75).

11. H.B. No. 1505, § 38, was repealed by § 108 of H.B. No. 1570. Section 38 of H.B. No. 1505 awarded $40,000.00 to a nonprofit arts center. (§ 108).

**House Bill No. 1570 contains other provisions:**

1. A section providing for reimbursement according to the State Travel Reimbursement Act, but the section does not state that it amends existing law or state where it is codified. (§ 74).

2. The Department of Public Safety may have a Patrol Academy during the fiscal year consisting of no fewer than thirty cadets. (§ 79).

3. Authorizing the State Fire Marshal to employ one Fire Protection Engineer. (§ 82).

4. Creates new § 1315 of Title 20 and requires the Oklahoma Supreme Court to implement an accounting system for the Oklahoma Court Information System. (§ 84).

5. Changes the salary for the chief executive officer of the Oklahoma Accountancy Board (§ 95 amends S.B. No. 317).

6. Changes the salary for the Director of the Department of Corrections. (§ 104 amends H.B. No. 1556).

7. Authorizes the Department of Central Services to sell two specified tracts of real property. (§ 96).

8. Reimbursement for specified out-of-state travel expenses by employees of the Forestry Division of the Department of Agriculture. (§ 105 amends H.B. No. 1116).

9. Budgetary and employee limitations otherwise imposed upon agencies by law shall not apply to state agencies made from appropriations and transfers made by this act. (§ 106).

10. Authorizes appropriations made by H.B. No. 1570 to be budgeted for specified fiscal years.(§ 107).

In sum, and as I discuss below, H.B. No. 1570 amends several other legislative bills from the same legislative session, and those amendments involve funds, number of employees, and in some cases, the salaries of all employees of particular agencies. H.B. No. 1570 also has new appropriations, authorizations for expenditures, transfers funds to certain accounts, and makes new law on non-budget topics.

**The Single–Subject Rule**

¶ 4 Our Constitution states that every act of the Legislature must embrace only one subject, unless the act is a general appropriation bill, general revenue bill, or a bill adopting a code, digest, or revision of statutes.

§ 57. Subjects and titles—Revival or amendment by reference—Extent of invalidity

Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof

extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof.

Okla. Const. Art. 5 § 57.

Does H.B. No. 1570 fit one of the exceptions to the single-subject rule? Is it a general appropriation bill, general revenue bill, or a bill adopting a code, digest, or revision of statutes? The Oklahoma Constitution divides appropriation bills into "general" appropriation bills and "separate" appropriation bills

§ 56. General appropriation bills—Salaries—Separate appropriation bills

The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject.

Okla. Const. Art. 5 § 56

House Bill No. 1570 creates law other than appropriations and expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. *See, e.g.*, House Bill 1570 at § 49 (Transition Oversight Panel for the Deinstitutionalization of Eastern State Hospital); § 50 (Joint Legislative Oversight Committee on the Eastern State Hospital Transition); and § 79 (Patrol Academy). Including such provisions in a

general appropriation bill violates Art. 5 § 56.

¶ 5 I also note that the Bill authorizes the State Fire Marshal to employ one Fire Protection Engineer (§ 82), and such would violate Art. 5 § 56 if H.B. No. 1570 were characterized as a general appropriation bill. Additionally, the Bill appropriates $28,750.00 to the State Fire Marshal for an additional employee (§ 83), and if the appropriation is for the employee authorized in § 82, then Art. 5 § 56 is violated by such provision.

¶ 6 Neither is H.B. No. 1570 a general revenue bill. Revenue bills are those laws whose principal object is the raising of revenue and which levy taxes. *Calvey v. Daxon*, 2000 OK 17, ¶ 14, 997 P.2d 164, 170. Further, H.B. No. 1570 does not adopt a code, digest, or revision of statutes. Thus, H.B. No. 1570 does not fall within the exceptions to Okla. Const. Art. 5 § 57.

¶ 7 The Bill itself divides its sections into different categories: "Education", "General Government", "Health and Social Services", "Human Services", "Natural Resources and Regulatory", and "Public Safety and Judiciary". Respondents argue that the Bill nevertheless embraces the single subject of "adjustments to state agencies appropriations" with additional "stray substantive provisions" that are not appropriations. In *Johnson v. Walters*, 1991 OK 107, 819 P.2d 694, it was asserted by a party that the provisions therein embraced the single subject of "state government," and we said that such a broad category was not proper. In *Campbell v. White*, 1993 OK 89, 856 P.2d 255, we said that if a bill contains multiple provisions, "the provisions must reflect a common, closely akin theme or purpose." *Id.* 856 P.2d at 260. The topic of "adjustments to state agencies appropriations" is almost as broad as that condemned in *Johnson*.

¶ 8 House Bill No. 1570 contains amendments to nineteen (19) other legislative acts.[4]

4. The Bills amended are as follows:
House Bill No. 1116 was approved May 2, 2001 and contains an emergency clause stating an effective date after passage and approval. 2001 Okla.Sess.Laws Ch. 165 § 2 (West).
House Bill No. 1505 was approved June 5, 2001, with some sections effective July 1, 2001

and others on August 1, 2001, and contained an emergency clause stating an effective date after passage and approval. 2001 Okla.Sess.Laws Ch. 416 §§ 81, 82, 83 (West).
House Bill No. 1518 was approved May 21, 2001, and contained an emergency clause stating

If "adjustments" or "amendments" is one legislative subject, as implied by respondents, then one bill could conceivably amend every appropriation for every state agency with virtually innumerable amendments. What respondents request is a judicial construction of the Oklahoma Constitution that would result in negating the single-subject rule. The Court cannot approve such an interpretation of the Constitution: "This Court is duty-bound to be intolerant of the legislature's attempt to do indirectly that which the constitution directly prohibits." *Lepak v. McClain*, 1992 OK 166, 844 P.2d 852, 854. *See also, Reherman v. Oklahoma Water Resources Board*, 1984 OK 12, 679 P.2d 1296, 1301–1302. House Bill No. 1570 violates the single-subject rule of the Oklahoma Constitution. *Johnson v. Walters, supra*, and *Campbell v. White, supra*.

¶ 9 Respondents argue that the unconstitutionality is cured by the decennial compilation of statutes. The decennial compilation of Oklahoma Statutes, 2001, was approved by House Bill No. 1819, approved April 9, 2001, with an emergency clause stating that it would take effect from and after its passage and approval. 2001 Okla.Sess.Laws Ch. 40, § 11 (West).

¶ 10 Respondents rely upon *Allen v. State ex. rel. Bd. of Trustees of Oklahoma Uniform Retirement System for Justices and Judges*, 1988 OK 99, 769 P.2d 1302. This argument was also raised by the dissenting opinion in *Campbell*. See the explanation in *Campbell v. White*, 1993 Ok 89, 856 P.2d 255, 263, 274, (Opala, J. dissenting, joined by Lavender, V.C.J.), stating that a defect in title and noncompliance with the single-subject com-

an effective date after passage and approval. 2001 Okla.Sess.Laws Ch. 217 § 41 (West).

House Bill No. 1529 was approved June 5, 2001, with two sections vetoed, contained an emergency clause stating an effective date after passage and approval, and stated that certain sections were effective July 1, 2001. 2001 Okla. Sess.Laws Ch. 417 §§ 28, 29 (West).

House Bill No. 1535 was approved May 31, 2001, contained an emergency clause stating an effective date after passage and approval, and stated an effective date of July 1, 2001. 2001 Okla.Sess.Laws Ch. 290 §§ 17, 18 (West).

House Bill No. 1539 was approved May 31, 2001, states that specified sections are effective July 1, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess. Laws, Ch. 291 §§ 24, 25 (West).

House Bill No. 1545 was approved June 8, 2001, states an effective date of July 1, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess. Laws, Ch. 432 §§ 20, 21 (West).

House Bill No. 1549 was approved May 21, 2001 and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess. Laws, Ch. 218 § 31 (West).

House Bill No. 1556 was approved May 31, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess. Laws, Ch. 292 § 19 (West).

House Bill No. 1564 was approved March 26, 2001, with a stated effective date of July 1, 2001, and with certain sections vetoed by the Governor. 2001 Okla. Sess. Laws, Ch. 6 § 171 (West).

Senate Bill No. 203 was approved June 1, 2001, states an effective date July 1, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 342 §§ 14, 15 (West).

Senate Bill No. 217 was approved May 22, 2001, stated an effective date of July 1, 2001, and contained an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 226 §§ 15, 16 (West).

Senate Bill No. 222 was approved May 22, 2001, stated an effective date of July 1, 2001, and contained an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 227 §§ 9, 10 (West).

Senate Bill No. 225 was approved May 31, 2001, states an effective date of July 1, 2001 and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 301 §§ 22, 23 (West).

Senate Bill No. 230 was approved May 22, 2001, and stated an effective date of September 1, 2001. 2001 Okla.Sess.Laws Ch. 228 § 15 (West).

Senate Bill No. 239 was approved May 31, 2001, states an effective date of July 1, 2001 and contains an emergency clause stating an effective date after passage and approval. 2001 Okla.Sess.Laws Ch. 302. §§ 16, 17 (West).

Senate Bill No. 242 was approved May 24, 2001, states an effective date of July 1, 2001 and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 268 §§ 9, 10 (West).

Senate Bill No. 249 was approved June 1, 2001, states an effective date of July 1, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 345 §§ 13, 14 (West).

Senate Bill No. 317 was approved June 5, 2001, states an effective date of July 1, 2001, and contains an emergency clause stating an effective date after passage and approval. 2001 Okla. Sess.Laws Ch. 424 §§ 2, 3 (West).

mand are objections to the form of an act rather than to its substance or content, and a defect in title is cured by inclusion in the decennial compilation. In *Allen* the Court explained that a constitutional defect in an enactment's title was cured by subsequent inclusion of the act in the decennial compilation of the statutes. *Id.* 769 P.2d at 1305. *See also McNeill v. City of Tulsa,* 1998 OK 2, ¶ 20, 953 P.2d 329, 334, and the explanation of *Allen.*

¶ 11 *Allen* does not apply to this controversy at this time. Adoption of the decennial statutes requires approval of that compilation by the Justices of the Oklahoma Supreme Court. 75 O.S.1991 §§ 177, 178.[5] Indeed, H.B. No. 1819 continues that requirement when amending these sections. 2001 Okla. Sess.Laws Ch. 40, §§ 6,7 (West). In *Allen* the defective legislative act of 1981 was cured retroactively "when that decennial recompilation was adopted by the Legislature on *June 2, 1982." Allen v. State ex rel. Bd. of Trust-*

ees *of Oklahoma Uniform Retirement System for Justices and Judges,* 1988 OK 99, 769 P.2d 1302, 1306, (emphasis in original). In *Allen* the Legislature approved the decennial compilation by a separate legislative act. 1982 Okla.Sess.Laws Ch. 356 (West). But respondents in today's case do not point to an approval of the decennial compilation by the Supreme Court or the Legislature. Respondent's argument attempting to constitutionally rehabilitate H.B. No. 1570 on the basis of a yet printed and approved decennial compilation does not apply here.

¶ 12 I sum, I agree with the Court that H.B. No. 1570 violates the Oklahoma Constitution. However, I must strenuously disagree with how the Court disposes of this controversy.

### The Relief Granted

¶ 13 Today the Court issues a writ of prohibition [6] preventing respondents from re-

5. 75 O.S.1991 § 177:
Approval by Supreme Court
Before finally printing the Oklahoma Statutes 1991, West Publishing Company shall present its manuscript of said Statutes to the Justices of the Supreme Court of the State of Oklahoma, and shall secure the approval of the Justices of the Supreme Court as to form and as to compliance with the provisions of this act; provided, further, that the Justices of the Supreme Court shall also, after approving said manuscript, certify said Statutes as to accuracy, completeness and correctness.
75 O.S.1991 § 178:
Adoption as general and public laws—Savings clause
The Oklahoma Statutes 1991, prepared by West Publishing Company and in six (6) volumes as above provided for, after the same shall have been approved by the Justices of the Supreme Court of the State of Oklahoma as hereinabove provided, shall be as provided in Section 179 of this title, and are hereby adopted as the general and public laws of the State of Oklahoma and the official Statutes of the State of Oklahoma, as to all laws therein contained. Provided, however, that this act shall not be construed to repeal or in any way affect or modify any special or local laws or any law making an appropriation or any law relating to any special election or validating act, or any law affecting any bond issue or by which any bond issue may have been authorized, nor to affect any pending proceedings or any existing rights or remedies, nor the running of the statutes of limitations in force at the time of the approval of this act; but all such local and special laws, laws making appropriations, laws

relating to special elections, validating acts, and laws relating to or authorizing bond issues, pending proceedings, and existing rights and remedies, and statutes of limitations running and in force at the time of the approval of this act shall continue and exist in all respects as if this act had not been passed. Provided, further, that this act shall not be construed to alter, change, impair, disparage, vest or divest, or in any way affect any right or interest in the United States, the State of Oklahoma, any of the Five Civilized Tribes, or other Tribes or Nations of Indians within the State of Oklahoma, nor shall the same be construed to repeal any act of the Legislature of the State of Oklahoma enacted subsequent to the adjournment of the First Regular Session of the Forty-third Legislature of the State of Oklahoma.

6. The Court, without comment, recasts the request for relief to that of prohibition. Prohibition is not the proper writ for this case. Prohibition will lie only where an inferior court or officer is acting in a judicial capacity exercising judicial or quasijudicial power not granted by law or making an unauthorized or excessive application of judicial force. *Southwestern Bell Telephone Co. v. Oklahoma Corp. Commission,* 1994 OK 38, 873 P.2d 1001, 1007. The acts sought to be restrained in this case are not ones occurring in the exercise of judicial or quasijudicial power. *See Jackson v. Independent School Dist. No. 16,* 1982 OK 74, n. 20, 648 P.2d 26, 31 where the Court defined quasi-judicial power. This Court has recognized that a State Treasurer is subject to a writ of mandamus to compel him or her to make disbursements that

leasing funds to state agencies. The Court does not address the impact of its order on Oklahoma Government, *state employees, and state contractors.* In short, it *appears* that some employees working today will awake tomorrow without a job or without state funds to pay them, and some contractors will find that the State has no money to pay certain bills. These concerns should be, and could be, addressed by either an oral argument before the members of the Court or a request for more facts from the parties.

¶ 14 This Court has a history of allowing oral arguments in controversies of this nature, but we have not called for oral argument in this case.[7] The Court may request additional facts from the parties, but that has not been done either.[8] We have not hesitated in the past to call for an oral argument before the full court when public issues were raised or the public purse threatened with disruptive litigation. Therefor I must address some of the problems that appear to arise because of the Court's action.

¶ 15 When a statute is held unconstitutional the usual rule is that the statute is treated as void, and not merely voidable. For most purposes: "An unconstitutional statute 'is wholly void, and in legal contemplation is as inoperative as if it had never been passed.'" *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 1989 OK 139, 782 P.2d 915, 917, *quoting, State v. Board of County Commissioners,* 1940 OK 468, 107 P.2d 542, 544. House Bill No. 1570 authorizes increases in full-time-equivalent employees in some budgets. For example, two additional Special Judges and an additional full-time employee of the District Courts are authorized (§ 89), two addi-

tional employees are authorized for the Oklahoma School of Science and Mathematics (§ 62), an additional employee in Oklahoma Tourism and Recreation Commission pending receipt of federal funds (§ 66), and an employee of the Office of the State Fire Marshal (§§ 82, 83). If the Judicial Department and these agencies have all of their full-time-equivalent positions filled this date (including those from H.B. No. 1570)—then the budgets of these entities appear to lack statutory authority to employ these employees authorized by H.B. No. 1570. Additionally, no promise may be made to these employees that any future salary will occur. See *Thurman v. Childers,* 1947 OK 38, 177 P.2d 108, where the Court's Syllabus states that: "The State is not liable for the payment of services rendered by extra help prior to the effective date of the Act of the Legislature authorizing the employment of such extra help." Although such a result may have immediate and serious personal consequences for these employees, a much greater problem hangs over the funding of many other employees and state contracts.

¶ 16 How will our executive and legislative officials view the Court's writ? They may turn to an Opinion of the Oklahoma Attorney General, and conclude that no employee salaries may be paid if the funds for those salaries come from an appropriation authorized by H.B. No. 1570, unless the particular state agency possesses money from nonfiscal year funds previously appropriated by the Legislature, which have not lapsed, or funds received from continuing appropriation. The Oklahoma Attorney General explained the problem thusly:

---

8. In the past when this Court has determined that additional facts were necessary the parties were directed to provide them to the Court. *See, e.g., Board of Education of Independent School Dist. No. 48 of Hughes County v. Rives,* 1974 OK 153, 531 P.2d 335, 336, (Court directed that a narrative statement be filed); *Board of Education of Okay Independent School Dist. No. One of Wagoner County v. Carroll,* 1973 OK 99, 513 P.2d 872, 874, (same). See also *Campbell v. White,* 1993 OK 89, 856 P.2d 255, where we said that: "*At the Court's request,* the State Officials filed a list of the general subjects of the challenged bills." *Id.* 856 P.2d at 257, emphasis added.

conform to law. In *Bryan v. Menefee,* 1908 OK 75, 95 P. 471, *State ex rel. Murray v. Carter,* 1934 OK 132, 30 P.2d 700, and *Board of Commissioners of Marshall County v. Shaw,* 1947 OK 181, 182 P.2d 507, writs of mandamus were held appropriate to compel the State Treasurer to comply with the Okla. Const. Art. 5 §§ 55 and 56. Petitioners sought mandamus in our case today, and that is the proper writ.

7. *Johnson v. Walters,* 1991 OK 107, 819 P.2d 694, (Sup.Ct. Docket, No. 77,919, July 18, 1991, oral argument ordered before Court en banc); *Wiseman v. Boren,* 1976 OK 2, 545 P.2d 753, 755 (Court explained in a similar case that the matter has "now been fully briefed and argued").

¶ 2 Okla. Const., Article X, Section 23 provides in pertinent part:

"The state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as is provided in this amendment...."

¶ 3 A mere promise to pay employees and contractors at some future date for the performance of services rendered in the past would be unenforceable in light of Okla. Const., Article X, Section 23, assuming, of course, that funds from appropriations made during prior years were unavailable to the agency and not encumbered in accordance with 62 O.S. 41.16 (1975) pertaining to contractors only. See *Thurman v. Childers*, 198 Okl. 205, 177 P.2d 108 (1947), wherein it was held that the state was not liable for payment for services rendered by employees prior to the effective date of a statute authorizing their employment. In *Thurman*, the statute, an appropriation law without an emergency clause, became effective July 26, 1945, and the employees' claim was for the period July 1, to July 25, 1945. The Court agreed with the Attorney General's advice to the effect that the funds appropriated in said statute would not become subject to obligation until July 26, 1945, when the appropriation law became effective. Claims incurred for services prior to that date were unpayable.

¶ 4 Returning now to the first portion of your initial question, except as hereinafter indicated, a state agency having received no appropriation by July 1, 1981, can only pay claims from nonfiscal year funds previously appropriated by the Legislature, which have not lapsed, or from funds received by an agency from continuing appropriations in line with *City of Sand Springs v. Department of Public Welfare*, Okl., 608 P.2d 1139 (1980). As to "nonfiscal obligations," see *Rountree v. Phelps*, 200 Okl. 528, 197 P.2d 973 (1948). Okla. Const., Article V, Section 55 speaks directly to the point:

"No money shall *ever* be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management *except in pursuance of an appropriation* by law* * *." (Emphasis added)

¶ 5 Subject to the qualifications hereinafter discussed, Article V, Section 55 is a self-executing [*Betts v. Commissioners of Land Office*, 27 Okl. 64, 110 P. 766 (1910) ] prohibition against payment of any money out of the State Treasury, "except in pursuant of an appropriation by law." See *Ex Parte Pope*, 33 Okl. Cr. 5, 242 P. 290 (1925), wherein it is said:

"... From the provisions of the section of the Constitution above quoted [Article V, Section 55], it is apparent that the sovereign people who framed the Constitution intended to keep a firm hand on the public purse strings, by limiting the power to spend money without an appropriation...."

¶ 6 There are certain exceptions. *Rountree v. Phelps*, supra, states:

"It has been the uniform holding of this court that where a state office has been created by constitutional provision or by legislative enactment and an annual salary has been fixed, the salary so fixed is a constitutional appropriation from current revenues of the amount required to pay such salary."

¶ 7 *Riley v. Carter*, 165 Okl. 262, 25 P.2d 666 (1933), upon which the above expression from *Rountree v. Phelps*, supra, was based, held Okla. Const., Article XXIII, Section 10, forbidding the Legislature from reducing or increasing the salary of a state officer during his term of office, prevented the Legislature from actually reducing an officer's salary by failing to appropriate sufficient moneys to pay the same. *Riley v. Carter* rejected the notion that the provisions of Article V, Section 55 prevented payment of the disputed salary due to the lack of a valid appropriation therefor. The Court pointed out that the underlying principle behind Article XXIII, Section 10 was:

"... the complete independence of the three branches of government provided for in the Constitution."

¶ 8 However, it must be pointed out that the rule of *Riley v. Carter* applies only to state officers as distinguished from state "employees," and pertains only to those state officers whose salaries are prescribed by law.

1981 OK AG 178, ¶¶ 2–8, (O.S.C.N.).

The members of this Court, as state constitutional officers, will have the good fortune of continuing to receive a salary after striking down an appropriations bill. *Riley v. Carter*, 1933 OK 448, 25 P.2d 666, 679–680. But in pronouncing the Bill void they create doubt and confusion as to whether certain state employees will be paid at the end of this month for work during this pay period. 1981 OK AG 178. Further, because the Court's writ holds the Bill to be *void*, the additional unanswered question remains as to whether payments of salaries and payments for public contracts already made pursuant to H.B. No. 1570 would be subject to future question or litigation.

¶ 17 This is not the first time we have concluded that a legislative act, including an appropriation, is unconstitutional. What relief did we grant in those cases? In three recent opinions we made the opinions prospective, and we thus avoided throwing state funding into chaos. For example, in *Campbell v. White*, 1993 OK 89, 856 P.2d 255, 263, our opinion was filed June 29, 1993 and we made it prospective to June 30, 1994. In *Johnson v. Walters*, 1991 OK 107, 819 P.2d 694, 699, we said that "today's decision will be given only prospective effect." In *State ex rel. Wiseman v. Oklahoma Board of Corrections*, 1978 OK 158, 614 P.2d 551, 557 (overruled on other grounds in *Johnson v. Walters, supra*), our decision was filed December 15, 1978, and we said that "It is therefore ordered that this decision shall become effective at 12:01 o'clock A.M. Thursday, February 1, 1979."

¶ 18 These three opinions are consistent with many of our opinions expressly holding that extraordinary relief will be denied if such relief would cause more harm than it corrects, and this rule has been applied to opinions addressing public funds as well as those construing the Oklahoma Constitution.

¶ 19 The general rule was recently stated in *City of Tulsa v. State*, 2001 OK 23, 20 P.3d 144, where we said that:

**¶ 4 This Court will withhold the writ when confusion would result from its issuance, and this rule applies when the confusion relates to the public purse.** *State ex rel. Nesbitt v. Ford*, 1967 OK 186, ¶ 33, 434 P.2d 934, 940, *citing, State ex rel. St. Louis-San Francisco Ry. Co. v. Boyett*, 183 Okl. 49, 80 P.2d 201, and *State ex rel. Dawson v. Dinwiddie*, 186 Okl. 63, 95 P.2d 867. In addition to declining to issue the writ, and in order to avoid confusion to current budgets, we make our opinion today effective on July 1, 2001. **We have made our rulings prospective in effect when the statute involved may change an appropriated budget.** *See, Campbell v. White*, 1993 OK 89, 856 P.2d 255 (wherein we made the opinion prospective to June 30, 1994). Therefore, we make our holding herein effective on July 1, 2001.

*Id.* 2001 OK 23, at ¶ 4, 20 P.3d at 147, emphasis added.

Consistent with this language we have said:

In *Gaines v. Maynard*, 1991 OK 27, 808 P.2d 672:

**A writ will not be granted if such would create confusion with the fiscal affairs of a governmental subdivision of the state.** *State ex rel. Cartwright v. Dunbar*, 618 P.2d 900, 913–914 (Okla.1980); *State ex rel. St. Louis–San Francisco Ry. Co. v. Boyett*, 80 P.2d at 205–206. See also, *Abel v. Madden*, 738 P.2d 1340, 1343 n. 4 (Okla. 1987) and the cases cited therein.

*Id.* 1991 OK 27, 808 P.2d at 677, emphasis added.

In *State ex rel. St. Louis–San Francisco Ry. Co. v. Boyett*, 1938 OK 378, 80 P.2d 201:

The writ was not issued in the Webster case **because it would have greatly disturbed the tax rolls** of the county. See, also, the case of *Excise Board of Tulsa County v. Board of Education of City of Tulsa*, 1937, 180 Okl. 251, 68 P.2d 827, wherein it was held that in awarding or denying writs of mandamus, courts exercise judicial discretion and are governed by what seems necessary and proper to be

done, in the particular instance, for the attainment of justice, and in the exercise of such discretion may, **in view of the serious public consequences attendant upon the issuance of the writ, refuse the same in a proper case, though the petitioner would otherwise have a clear legal right for which mandamus is an appropriate remedy.**

*Id.* 183 Okla. 49, 80 P.2d 201 at 205, emphasis added.

In *Liberty Nat. Bank v. Excise Bd. of Jefferson County,* 1935 OK 938, 52 P.2d 51:

The judgment of the trial court does not state the ground or grounds upon which the writ was denied, but it appears that the case was not heard in the court below until January 5, 1935, at which time the tax levies had become final and had been entered upon the tax rolls and doubtless some of the taxes had been paid, **and under these conditions it was within the discretion of the trial court to deny the writ, because of the great confusion that would inevitably result in the fiscal affairs of the city of Waurika and of Jefferson county to disturb the tax rolls at such time.**

**A writ of mandamus will not lie where its issuance would work injustice or introduce confusion and disorder.** *Webster v. Morris,* 129 Okl. 145, 264 P. 190; *Board of Education of Guthrie v. Excise Board of Logan County,* 86 Okl. 24, 206 P. 517.

*Id.* 52 P.2d at 53, emphasis added.

In *Herndon v. Excise Bd. of Garfield County,* 1931 OK 8, 295 P. 223:

**"Where the issue of the writ would disturb official action, or create disorder or confusion, it may be denied and this is so even where the petitioner has a clear legal right for which mandamus would be an appropriate remedy."** 38 C.J. 550; *Sheffield v. Fountain,* 101 Okl. 168, 224 P. 339; *Board of Edu. of Guthrie County v. Logan County,* 101 Okl. 225, 224 P. 508; *Board of Edu. of Guthrie County v. Excise Board of Logan County,* 96[86] Okl. 24, 206 P. 317[517]; *Board of Excise of Okl. County v. Okla. County School Dist., supra,* 31 Okl. 553, 122 P. 520, Ann. Cas. 1913E, 369; *McKee v. Adair Election*

*Board,* 36 Okl. 258, 128 P. 294; *State v. Crouch,* 31 Okl. 206, 120 P. 915; *Higgins v. Brown,* 20 Okl. 355, 94 P. 703.

*Id.* 295 P. at 225, emphasis added.

In *State ex rel. Settles v. Board of Ed. of Dependent School Dist. No. D–38 of McCurtain County, Oklahoma,* 1964 OK 12, 389 P.2d 356:

While we are not bound to follow legislative and departmental **constructions of constitutional provisions,** (*Glasco v. State Election Board,* 121 Okl. 119, 248 P. 642; *American Druggists' Fire Ins. Co. of Cincinnati, Ohio v. State Ins. Board,* 184 Okl. 66, 84 P.2d 614 ), **justice will not permit us to ignore such interpretations to the detriment of those who may have relied thereon.  Accordingly our order must render justice as between the parties, and it should avoid confusion and disorder** in those districts which have employed Legislator-teachers during the current school term.  **A writ of mandamus may be granted, or withheld, to avoid confusion and disorder.** *Board of Education of City of Guthrie v. Excise Board,* 86 Okl. 24, 206 P. 517.

*Id.* 389 P.2d at 361, emphasis added.

We have applied this principle when discussing unconstitutional statutes.  In *State ex rel. Cartwright v. Dunbar,* 1980 OK 15, 618 P.2d 900 we said that:

This Court indirectly considered a similar issue in *State ex rel. Nesbitt v. Ford,* Okl., 434 P.2d 934 (1967) and in *Pan American Petroleum Corporation v. Board of Tax–Roll Correction of Tulsa County,* Okl., 510 P.2d 680 (1973).

In *Ford* **we declared unconstitutional statutes which exempted certain lands from municipal taxation .... we said that the equities in the case did not authorize retroactive application of our decision.  Therein we quoted** *State ex rel. Dawson v. Dinwiddie,* 186 Okl. 63, 95 P.2d 867 (1939).

**"A writ of mandamus may properly, in court's discretion, be denied when its issuance would create confusion, especially in connection with the fiscal**

affairs of a governmental subdivision of the State."

In *Ford,* the opinion of the Attorney General was issued and the action was brought in our Court in 1966. In **September, 1967, our decision was promulgated** and we said, "such properties should be classified for city taxes **beginning with the tax year 1968."** . . .

In our opinion the **"equities in this case do not authorize retroactive application of our decision herein"** (see *Ford,* supra) to any year preceding the 1980 tax year.

*State ex rel. Cartwright v. Dunbar,* 618 P.2d at 912 to 914, emphasis added.

The remedy of mandamus is thus influenced by equity principles. These mandamus opinions recognize that when inequity may result from our holding a statute unconstitutional then mandamus may be withheld. *See, e.g., State ex rel. Cartwright v. Dunbar, supra; State ex rel. Nesbitt v. Ford, supra.* We have applied this concept when we have recognized the inequities in making some of our opinions retroactive, and thus made them prospective.[9] At the heart of our analysis in both mandamus and "prospective" opinions has been this concept of balancing equities.

¶ 20 We have made first-impression rulings on state constitutional issues prospective in application.[10] We have used a principle of equity when making our ruling prospective on the constitutionality of a statute. For example, we have said the following:

Generally speaking an unconstitutional law confers no rights, creates no liability, and affords no protection. *Oklahoma Education Ass'n., Inc. v. Nigh,* 642 P.2d 230, 239 (Okla.1982). Consistent with this rule we have explained that the invalidity of an unconstitutional statute relates to the date of the statute's enactment and not to some later date: "The courts have no power to make a statute inoperative only from the date of an adjudicated invalidity, because the courts merely adjudge that a statute conflicts with organic law, and the Constitution then operates to make the statute void from its enactment, the courts having no power to control the operation of the Constitution." *State ex rel. Tharel v. Board of County Commissioners of Creek County,* 188 Okl. 184, 107 P.2d 542, 547 (1940), and quoting with approval from *State ex rel. Nuveen v. Greer,* 88 Fla. 249, 102 So. 739, 745 (1924). **However, when an invalid statute involves both a compulsion of statutory duties by public officials and such officials rely on the well-known presumptive validity of statutes then a court may make the ruling on the statute prospective in effect.** *See General Motors v. Oklahoma County Board of Equalization,* 678 P.2d 233, 238–241 (Okla.1983), cert. denied 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984); *Oklahoma Education Ass'n., Inc. v. Nigh,* 642 P.2d 230, 239 (Okla.1982).

*Ethics Commission of State of Okla. v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1079, emphasis added.

9. Judicial policy determines whether, and to what extent, a new rule will operate retroactively. *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, n. 22, 979 P.2d 252, 257. *See Independent Finance Institute v. Clark,* 1999 OK 43, n. 45, 990 P.2d 845, 854, (discussed the absence of "inequity" in retroactive application, in part); *Clay v. Independent School Dist. No. 1 of Tulsa County,* 1997 OK 13, 935 P.2d 294, 307–308 *(reliance of parties on prior law discussed); Taylor v. Chubb Group of Ins. Companies,* 1994 OK 47, 874 P.2d 806, 810 (discussed unreasonable prejudice suffered by party in first impression case as grounds for prospective application). See *Strelecki v. Oklahoma Tax Commission,* 1993 OK 122, 872 P.2d 910, 912–916, (discussing, *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 [1971], and subsequent opinions from the U.S. Supreme Court), and opinions since *Strelecki,* making rulings prospec-

tive. *See, e.g., City of Tulsa v. State,* 2001 OK 23, ¶ 4, 20 P.3d 144, 147; *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, ¶ 12, 979 P.2d 252, 257; *Globe Life and Acc. Ins. Co. v. Oklahoma Tax Commission,* 1996 OK 39, 913 P.2d 1322, 1329; *Bushert v. Hughes,* 1996 OK 21, 912 P.2d 334, 335, 340; *McMillian v. Holcomb,* 1995 OK 117, 907 P.2d 1034, 1037; *Resolution Trust Corp. v. Grant,* 1995 OK 68, 901 P.2d 807, 819; *Brown v. Green Country Softball Association,* 1994 OK 124, 884 P.2d 851, 853; *Schulte Oil Co., Inc. v. Oklahoma Tax Commission,* 1994 OK 103, 882 P.2d 65, 73; *Manning v. State ex rel. Dept. of Public Safety,* 1994 OK 62, 876 P.2d 667, 673.

10. *See, e.g., City of Oklahoma City v. State ex rel. Oklahoma Dept. of Labor,* 1995 OK 107, ¶ 6, 918 P.2d 26, 32–33 (supplemental opinion on rehearing).

Officials "rely" on the validity of statutes. *Id.* The act of reliance by a person upon the conduct of others as justification for that person's conduct of his or her affairs is a doctrine of equity jurisprudence.[11] State officials, state employees, and contractors doing business with the State have relied upon the presumed constitutionality of H.B. No. 1570. In sum whether we examine this case under "prospective rulings jurisprudence" or according to the elements of extraordinary writs,[12] reliance by these groups of people and the potential confusion to state funding are proper considerations for this Court when crafting judicial relief. This Court has also recognized that when its opinion involves rights held under current law and the opinion requires a legislative response, then an opinion with prospective effect allows those affected to order their affairs. *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153. The Court today departs from this time-honored practice. **Neither the petitioners nor the Court cites to any opinion where this Court has by its writ voided a current state appropriation and snatched funds away from current state government operations.**

¶ 21 As a final note on this topic, this Court has not explored other potential types of relief for this controversy. For example, this Court has stayed issuance of an extraordinary writ for the purpose of allowing officials to comply with an opinion of the Court: "Being confident that defendants will obey the directions of this court as above set out, we will withhold the peremptory writ at this time." *Rountree v. Phelps*, 1948 OK 152, 197 P.2d 973, 977. No doubt, the Court's action is due, in part, to the lack of input from the parties on the effect our writ will have on the public purse.

¶ 22 I must point out that the amount of appropriations struck down by the Court will likely necessitate corrective action on the parts of the Legislature and the Governor. Intervenor's motion for continuance points out that "**Petitioners conceded that this litigation 'may affect many worthy state agencies and programs.'**" Mtn. at p. 2, quoting, Petnrs' Brief at 9, emphasis added. If this Court were to hear oral argument I would ask Respondents Butkin and Daxon to explain the effect of stopping the transfer of these of dollars, and inquire whether the action requested of the Court would inject confusion or uncertainty to the fiscal affairs of the State of Oklahoma. If the answer were affirmative I would ask Petitioners, as elected representatives, for their input on how the resultant fiscal confusion could be alleviated or eliminated by the Court.

¶ 23 The Order of the Court allows Stratton Taylor, President Pro Tempore of the Oklahoma State Senate, to intervene in this case. His affidavit is part of the record in this proceeding. That affidavit states that he and the Speaker of the House of Representatives "asked the Governor to add to his call for the current special session consideration of legislation to correct any possible defects in House Bill 1570", and this request was made by letter delivered to the Governor, and the Governor refused. The affidavit further states that the "Governor and Representative Fred Morgan, House Minority Floor Leader and a Petitioner in this case, have indicated publicly that they want this case decided by the Supreme Court, rather than addressing the issue in special session."

---

11. *See, e.g., Waters v. Stevens*, 1947 OK 4, 176 P.2d 808, 811–812; *Luschen v. Stanton*, 1943 OK 177, 137 P.2d 567, 569. *Accord, Russell v. Board of County Commissioners, Carter County*, 1997 OK 80, 952 P.2d 492, 503, (elements of promissory estoppel discussed).

12. A writ of prohibition will lie only in cases of manifest necessity. It will not be granted where a greater injustice might be done by its issuance than would be prevented by its operation. *Board of Commissioners of Carter County v. Worten*, 1927 OK 445, 261 P. 553, 554. Mandamus is governed by equitable principles. *State ex rel. Nesbitt v. Ford*, Okl., 1967 OK 186, 434 P.2d 934.

Extraordinary declaratory relief is also governed by equitable principles. See *Ethics Commission v. Cullison*, 1993 OK 37, 850 P.2d 1069, where we explained the equitable origins of declaratory relief, citing the preventative writs at common law, the equitable remedy of a bill quia timet, and to the opinion in *Automotive Equip. v. Trico Prod. Corp.*, 11 F.Supp. 292, 294, (W.D.N.Y. 1935), for an explanation of the origin of declaratory judgments in courts of equity. *Cullison*, 850 P.2d at 1073, n. 2. Thus, whether the proceeding is one in mandamus, prohibition, or declaratory relief, principles of equity are considered when fashioning extraordinary relief in this Court.

The affidavit also states that: "If the Governor does not amend his call for the special session so that we can consider legislation regarding House Bill 1570, then it is my intention to ensure that the Legislature will consider such legislation immediately during the regular session of 2002." An affidavit is a proper way to bring facts before us in an original jurisdiction proceeding. Okla.Sup. Ct.R. 1.191. **This affidavit is not contested by petitioners.** The Petitioners state that they must seek this action in cutting ongoing appropriations "in order to achieve the higher purpose of supporting, defending and obeying the terms and provisions of the Oklahoma Constitution." Petnrs' Brief at p. 9.

¶ 24 In sum, this Court has in the past assumed original jurisdiction to settle confusion and relieve governmental gridlock. *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069. Our assumption of original jurisdiction should not be used to **create** confusion and uncertainty with those funds currently being used to fund state government. *City of Tulsa v. State, supra, State ex rel. Cartwright v. Dunbar, supra.* This Court has a history of making its rulings prospective when appropriations have been determined to be unconstitutional because the single-subject rule was violated. *Campbell v. White, supra; Johnson v. Walters,* supra; *State ex rel. Wiseman v. Oklahoma Board of Corrections, supra.* This history is consistent with our refusal to issue extraordinary writs when they would create confusion, *State ex rel. Nesbitt v. Ford, supra,* consistent with cases when we have considered the equities in making rulings prospective, *Clay v. Independent School Dist. No. 1 of Tulsa County, supra,* and consistent with making our rulings prospective when legislative action is required, *Vanderpool v. State, supra.*

¶ 25 The case today shuts down many millions of dollars for appropriations in the current fiscal year. **The Court's writ is effective the day it is filed with the Clerk of this Court.** *Chronic Pain Associates, Inc. v. Bubenik,* 1994 OK 127, ¶ 31, 885 P.2d 1358, 1364; Okla.Sup.Ct.R. 1.193. I would make the Court's ruling prospective, effective 60 days after the Legislature goes into regular session, akin to what we did in *Vanderpool* and other cases, and give the responsible parties time to correct the infirmity. The Court today departs from its long and unbroken line of opinions on the same and similar issues. I must, therefore, respectfully dissent. Justice Lavender advises that he joins in this writing.

